THE PEOPLE, ex rel. JAMES S. T. STRANAHAN, acting President, etc., Respondent, *v.* HUBERT O. THOMPSON, as Commissioner, etc., et al., Appellants.

The act of 1867 (Chap. 399, Laws of 1867), incorporating the New York Bridge Company, does not authorize the obstruction, by placing columns or pillars thereon, of any street crossed by approaches to the bridge. On the contrary, it prohibits any such obstructions and requires the supports to the " arch or suspended platform " crossing the street to be located outside of the street lines.

Accordingly *held*, that a writ of *mandamus*, requiring the commissioner of public works and the department of parks of the city of New York to grant a permit to the board of trustees of the bridge, to enter upon certain streets and erect columns therein to support a platform for the bridge over the streets, was improperly granted; that it could not be sustained upon the ground that the proposed erections would occasion but a trifling obstruction of the streets, as this was not for the trustees or the court to determine.

(Argued December 9, 1884; decided January 20, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 31, 1884, which affirmed an order of Special Term directing the issuing of a peremptory writ of *mandamus*, the substance of which is stated in the opinion.

*James C. Carter* for appellants. The pillars or columns proposed to be erected by the relator in Chatham or Centre streets

would be an obstruction it would be the duty of the commissioner of public works to remove. (Laws of 1882, chap. 410, § 316, subd. 9; Revised Ord., § 140.) Their erection is expressly prohibited. (1 Laws of 1867, 951, chap. 399, § 10.) In construing a statute if implication is resorted to, it must be a necessary one. (*In re B. & A. R. R. Co.*, 53 N.Y. 574.) The construction of the statute must be most strongly against the corporation. (*Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659 ; *Newtown* v. *Commissioners, etc.*, 100 id. 561.)

*Aaron J. Vanderpoel* and *William N. Dykman* for respondent. The location of the New York terminus at the west side of Centre street is authorized. (Laws of 1867, chap. 399, § 10; *People* v. *B. F. & C. I. R. R. Co.*, 89 N. Y. 75 ; *Farmers' Turnpike Co.* v. *Coventry*, 10 Johns. 389; *Mohawk Bridge Co.* v. *U. S. R. R. Co.*, 6 Paige, 554; *Mason* v. *B. C. & N. R. R. Co.*, 35 Barb. 377.) There is power in the trustees to build this structure "as an avenue of approach" to their bridge. (Laws of 1867, chap. 399, § 2 ; Laws of 1875, chap. 300, § 5.) The maps filed from time to time did not, and could not, affect the termini. (*People* v. *B. F. & C. I. R. R. Co.*, 89 N. Y. 75.) Streets may be burdened with a further public use under a grant of general power. (*In re N. Y. C. R. R. Co.*, 77 N. Y. 248.) The *mandamus* was properly issued. (Laws of 1882, §§ 322, 316, subd. 9 ; § 86, subd. 5 ; *People* v. *Tremain*, 17 How. Pr. 10; *People* v. *Perry*, 13 Barb. 206 ; *Rex* v. *Commissioners*, 2 Term R. 381; *Rex* v. *Cookson*, 16 East, 376 ; *Rex* v. *Commissioners of Liverpool*, 2 Maule & S. 223 ; *Smith* v. *Commissioners of Portage*, 12 Ohio, 54; *Boone* v. *Todd*, 3 Miss. 140 ; *Commonwealth* v. *Justices*, 2 Virg. Cas. 9 ; *Brander* v. *Chesterfield Judges*, 5 Call. 548 ; *Jones* v. *Strafford Judges*, 1 Leigh, 584; *Ex parte Jennings*, 6 Cow. 418 ; *People* v. *Champion*, 16 Johns. 61 ; *People* v. *Commissioners*, 1 Cow. 23 ; *People* v. *Collins*, 19 Wend. 56 ; Topping on Mandamus, 325 ; *Rex* v. *Middlehurst*, 1 Wills. 283 ; *People* v. *Earl*, 46 How. Pr. 308; *People* v. *Earl*, id. 267 ;

*People, ex rel. Murphy*, v. *Kelly*, 76 N. Y. 475; *People* v. *Supervisors*, 56 id. 249; *People* v. *Collins*, 19 Wend. 56.)

MILLER, J. The relator seeks relief by a *mandamus*, to compel the commissioner of public works and the department of parks to grant a permit to the board of trustees of the New York and Brooklyn bridge to enter upon Chatham and Centre streets, for the purpose of laying the foundation to complete said bridge in accordance with a map filed in the register's office of the city and county of New York. The effect of the permit asked for would be to allow the relator to construct a platform over Chatham and Centre streets, supported by pillars or columns resting in one or both of these streets. The question presented is, whether the bridge company, under its charter, is authorized to locate its terminus, on the New York side, at the place named, in the manner indicated. This must depend upon the construction to be placed upon certain provisions of the charter of the company.

The relator relies upon the provisions of section 10 of the act incorporating the bridge company. (Laws of 1867, chap. 399.) That section contains no phraseology which sanctions any obstruction to the streets by placing columns or pillars in the same, but on the contrary expressly prohibits any such exercise of power. It certainly contains no language which confers any such authority, and none can be implied from the terms used. It declares that said bridge "shall not obstruct any street which it shall cross, but that such street shall be spanned by a suitable arch or suspended platform as shall give suitable height for the passage under the same, for all purposes of public travel and transportation." The language employed is clear and comprehensive, and is directly aimed against any and all obstructions to the use of the streets, otherwise than as provided by the act in question, as hereafter stated. It embraces not only the building of the bridge itself in any street but every obstacle, however small, which may be regarded as an interference with the public travel or the general use of the streets. The obstruction referred to may be greater or less,

but the statute confers no authority which authorizes the exercise of any discretion in determining its character. The board of trustees of the bridge have no right, in the exercise of their powers under this section, to say that any erection in the streets, made by them, can occasion but a trifling obstruction, and, therefore, is not a violation of the statute, nor have the courts authority to review their action and to decide, under the statute, how far and to what extent pillars or columns may be erected, which will not occasion any obstruction. The statute is direct, explicit and positive, against any interference of such a character. It provides that the bridge in question shall not obstruct, and thus prohibits the interposition of any obstacle whatever, to the free and unobstructed passage of the streets, and when it declares that the streets shall be spanned by a suitable arch or suspended platform, it means that the pillars or columns which sustain such arches or platforms shall be erected outside of and beyond the streets. Any other construction would place an interpretation upon the language employed which would render it futile and of no avail.

The claim that the words "to obstruct" are to be interpreted in an enlarged and extended sense, so as to embrace obstacles and erections which may greatly impede the use of the streets, but not the columns or pillars which it is designed to erect, is not well-founded and cannot be supported upon any valid legal ground. There is nothing in the charter of the bridge company, or the surrounding circumstances, which upholds such a construction. While the legislature evidently had in view the erection of the bridge upon and through the public streets, in some instances to an extent which would close up such streets and render them useless for public convenience and travel, and made provision in such cases for the payment of damages to the owners of real estate adjoining the same, it also took into consideration the fact that public streets were necessarily to be crossed, and it provided accordingly. The taking of private property and the payment of compensation for the taking of the same, as provided by sections 10 and 11 of the act, would give to the bridge company

title to the land upon which the columns or pillars, supporting the spans or arches, should be placed, thus making full provision against the necessity of using the public streets for any such purpose.

Considerable stress is laid, by the relator's counsel, upon the location of the *terminus* of the bridge ; but if the views we entertain are correct, it is not important to consider the question whether the location made was in strict accordance with the charter.   Nor is it material to determine especially the effect to be given to the maps filed from time to time which were intended to show or did indicate the *terminus* of the bridge. The plan of the structure proposed by the relator, which was filed in May, 1884, shows that two columns are to be placed between Chatham and Centre streets, from which one arch springs east over Chatham street and another west over Centre street.   These columns cannot but operate as obstacles and obstructions in the two streets, for they necessarily prevent that free passage and general use to which they are now subjected. Although the streets are to be spanned by an arch or platform as provided by the tenth section of the act cited, this does not limit the construction to be placed on the use of the word "obstruct," nor manifest that any discretion was to be exercised by the trustees in reference to the manner in which the arches or suspended platforms were to be constructed.   The word "suitable," as used in the act in reference to the height of the span as well as the arch, furnishes no ground for claiming that the trustees had authority to disregard what was expressly prohibited therein.   According to the plan on file it appears that the columns or pillars contemplated, and which will support the arches or suspended platforms, will be placed in a triangle between Chatham and Centre streets and Tryon row, but this fact does not evince that they will not obstruct the streets in that vicinity.   In an open space of this description every presumption is in a contrary direction.

After a careful examination of the provisions of the act cited we think it is very evident that while the legislature intended to confer absolute authority for the building of the bridge

through such streets as might be required upon payment of compensation to abutting owners, it is also apparent that they designed to protect the public streets and the crossing of the same, by positive and clear restrictions. These restrictions are equally applicable to all streets which necessarily were to be crossed by the bridge, and no distinction can be made in favor of any portion of the bridge or its approaches which authorizes a disregard of the statute. It must be interpreted according to the ordinary rules applicable to the construction of statutes, and we are not at liberty to consider the advantages arising from the plan of the relators, or the necessity and importance of carrying it into effect for the benefit of the public. Such considerations can have no place in determining questions of the character of the one now before us.

While property devoted to one public use may be applied to another, this can only be done when express authority is given for that purpose by the clearest provisions of law. Streets must remain and be used as such and for no other purpose until otherwise directed by legislative enactment. Without this no authority exists for their invasion, or appropriation for a different purpose. The authority claimed by the relator was not conferred by the act in question, and the remedy is by application to the legislature, and not to the court.

We think that the commissioner of public works had no authority to grant the permit required, and that the court below erred in granting the *mandamus.* It follows that the order appealed from should be reversed and the motion for a *mandamus* denied.

All concur, except EARL and FINCH, JJ., dissenting.

Ordered accordingly.