cording to promise does the property much more harm than the failure of a merchant to meet his obligations. To insure success it must be in the hands of those possessing the necessary capital and enterprise to push it in the line of journalistic prosperity. In the control of one running it at a loss he is unable to bear, awaiting the advent of prospective purchasers, whether they be the representatives of silver or gold, it is doomed to disaster. Nothing but luck, which seldom comes at the proper time, can save it. These remarks are called forth by the rule, before referred to, that where the continuance of the injunction may result in more harm than good it will not be continued, and by the further rule that where parties are of ample pecuniary responsibility the remedy should be sought in an action at law to recover damages for the wrong rather than by injunctive relief in equity.

For these reasons, the motion to continue the injunction will be denied, and the temporary injunction dissolved, with $10 costs.

(12 Misc. Rep. 631.)

NASSAU ELECTRIC R. CO. v. WHITE, Commissioner of City Works, et al.

(City Court of Brooklyn, Special Term. June, 1895.)

MANDAMUS—PERMIT TO CONSTRUCT STREET RAILROAD.
    Where a street commissioner refuses to issue a permit for the construction of a street railroad, mandamus to compel him to issue the permit is the proper mode to raise the question as to whether his refusal was right or wrong, and injunction will not lie.

Action by the Nassau Electric Railroad Company against Alfred T. White, as commissioner of city works, and others. Plaintiff moves for an injunction. Denied.

James C. Church and John J. Allen, for plaintiff.
Albert G. McDonald, for defendants.

CLEMENT, C. J.    The plaintiff alleges in its complaint that it is a street-railway company, duly incorporated and authorized to lay and operate its railroad on Ocean avenue, in the Thirty-first ward, formerly Gravesend. The complaint also sets forth that the company obtained the consent of the highway commissioners of Gravesend before the town was taken into the city, and that it had obtained the constitutional consent of the property owners. The latter two allegations are denied in the answer in a manner authorized by the Code (section 500). The company applied to the defendant commissioner of city works for a permit to enable it to proceed with the construction of its tracks on Ocean avenue. The commissioner refused to grant the permit until he was satisfied that a majority of the property owners had given their consent, whereupon the president of the plaintiff, by letter, declined to give the commissioner any information in relation to consents. The complaint (paragraph 6) sets forth that the defendant is commissioner of the department of city works, and as such commissioner has such charge of the streets as is conferred by the charter, and that it was his duty to permit

the construction by plaintiff of its railroad on Ocean avenue, and to issue "such formal or other permit, order, or instructions as may be required in the premises to enable the plaintiff to proceed with such construction without interference on the part of the officers or agents of said department or of said city." The principal question argued on the motion was whether or not, if the consent of the local authorities had been given, the commissioner of city works could contest the right of plaintiff to lay its tracks on a city street. I do not think that it is necessary to decide the question on this motion. The plaintiff now seeks an injunction to restrain the commissioners from interfering with the construction of the railroad.

I am clear that the plaintiff has mistaken its remedy. When the commissioner refused to issue the permit, the plaintiff should have applied for a mandamus to compel him so to do, and, on the hearing of that proceeding, the question would arise whether the commissioner is right or wrong in his contention. It has always been the custom in this city for parties to apply for a permit to the officer who represents the city in the care of streets, whenever such party desired to open the streets. The reason of the custom is that the city, by virtue of the acceptance of its charter, is responsible to travelers for the condition of its streets. This liability is established by a long line of authorities, from Weet v. Village of Brockport, 16 N. Y. 161, note, and Conrad v. Village of Ithaca, Id. 158, down to almost the last volume of the Reports of the court of appeals. However, it is not necessary to put my decision on any custom, for the plaintiff's counsel substantially concedes, by the allegations in the complaint before quoted, that it cannot proceed without a permit, but the contention is that the commissioner unjustly refused to grant one. The ordinance of November 24, 1890, also expressly provides that a permit is necessary in order that a railroad company may disturb the streets. Several cases are reported where corporations claiming to be duly incorporated and authorized to use the streets of New York City have applied for a permit to the commissioner of public works. In the case of People v. Thompson, 98 N. Y. 6, the lower courts held that the New York & Brooklyn Bridge Company was entitled to the permit, which decision was reversed by the court of appeals. In the case of People v. Newton, 112 N. Y. 396, 19 N. E. 831, the railroad company claimed to have authority of law to lay a cable road on Third avenue, but the court of appeals held that the commissioner was right in his refusal to issue a permit. The same company, after legislation, obtained its permit. 121 N. Y. 536, 24 N. E. 951. Even though a street-railway company has the right to construct its tracks, its work is subject to the supervision of the officer of the city who has the care of its streets. Otherwise, the company could take possession of the street, unnecessarily incumber it, and lay its tracks as its officials pleased, irrespective of the rights of the public. It may be claimed that an injunction might be issued restraining the commissioner from interfering with the construction, except to supervise and protect the public rights. This would put the commissioner on the verge of contempt of court

at all times.    If he honestly overstepped his line of duty, he would be subject to a motion, and the question of contempt would be a matter of fact.    The case of Dry Dock, E. B. & B. R. Co. v. Mayor, etc., of New York, 47 Hun, 221, is instructive on this question.    If the tracks were actually or partially laid on Ocean avenue, and the defendants threatened to remove them, the plaintiff would be entitled to an injunction until the questions could be tried; and the authorities cited by plaintiff so hold, and nothing more.    The decision of an official that railroad tracks in existence are a nuisance is entirely different from the claim of an official that he may supervise and protect the rights of the people.    Motion for an injunction denied.