## Rafferty et al. v. Central Traction Co., Appellant.

[Marked to be reported.]

*Equity pleading—Parties—When bill not multifarious.*

Where a cause of complaint is one that is common to all the plaintiffs, and the right under which all claim is precisely the same as to each, and the complaint of all is against the same defendant for the doing of acts which affected all alike, and in the same manner, and the defence set up is common to all the plaintiffs, and the testimony, proofs and decree are alike as to all the plaintiffs, a bill filed by several such plaintiffs against the common defendant is not multifarious.

*Lease of franchises of street railways.*

A street railway company which has without authority of law leased the property and franchises of another railway company is responsible to the commonwealth, but not to a private citizen, who has sustained no special injury for which he is entitled to redress.

*Use of streets by street railway companies—Act of March 22, 1887.*

Under the first section of the act of March 22, 1887, which provides that a street railway company organized thereunder may lay tracks upon any street upon which "a passenger railway now is, or may hereafter be constructed," such a company may enter upon streets and lay their tracks thereon, although the streets have not before been occupied by passenger railways.

*Leases of street railways—Act of February 17, 1870.*

The act of February 17, 1870, P. L. 81, giving to railroad companies the right to lease their property and franchises, applies to street passenger railway companies as well as to steam railroad companies.

| 147 | 579 |
| .160 | 374 |
| 161 | 404 |

| 147 | 579 |
| 167 | 70 |
| 147 | 579 |
| 178 | 191 |
| 147 | 579 |
| 192 | 604 |
| 147 | 579 |
| h206 | ² 40 |

| 147 | 579 |
| 24 SC | ⁵602 |
| 147 | 579 |
| e214 | 591 |

| 147 | 579 |
| 31 SC | ³231 |

| 147 | 579 |
| 32 SC | ¹595 |

| 147 | 579 |
| 34 SC | 382 |

| 147 | 579 |
| 220 | ²616 |

| 147 | 579 |
| f39SC | ⁴379 |

580 RAFFERTY v. CENTRAL TRACTION CO., Appellant.

*Eminent domain—Motor railway—Art. XVI, sec. 8, constitution.*

The operation of a street railway by horse-car, cable or electricity, when authorized by law, on a public street, is not an additional servitude or burden on the land, which will entitle the owner of property abutting on the street to compensation under article XVI, sec. 8, of the constitution.

*Right of abutting owners to use of street.*

If at any time the owner of property abutting on a street has occasion for the presence of vehicles in front of his property on the street to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purposes; and if, in such exercise of the right, the passage of street cars is impeded, the street cars must wait.

Argued Nov. 10, 1891. Appeal, No. 259, Oct. T., 1891, by defendant, from decree of C. P. No. 2, Allegheny Co., July T., 1889, No. 489, in favor of plaintiffs, Bernard Rafferty et al. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

Bill in equity to restrain defendants from operating a cable street railway on High street in the city of Pittsburgh.

From the record it appeared that the bill was filed by six separate owners of property on High street. The defendant demurred to the bill on the ground of misjoinder of parties. The court overruled the demurrer, and ordered the defendant to answer. [1]

The case was referred to Lewis McMullen, Esq., as master, who reported the facts as stated in the opinion of the Supreme Court. The master recommended a decree perpetually enjoining the defendant from the use of High street. The following exceptions, inter alia, were filed to the master's report:

1. The master erred in holding that the bill is maintainable under the authorities. [2]

2. The master should have stated in addition to the facts relied upon by the defendants, as showing their legal right to occupy High street, that the defendants rely upon the agreement between the company and the Central Passenger Company, evidenced by the resolutions in evidence and the letter of the officers of the Passenger Company to the Traction Company preceding the work. [3]

3. The master erred in holding that the agreement of December 27, 1888, between the Traction and Railroad Companies, shows "that the Traction Company was to construct

the tracks of said branches at its own cost, if it desired to use them." [4]

4. The master erred in holding, as a matter of law, that such companies (to wit, traction companies) are only authorized to enter on such streets upon which railways are constructed, that is, built, completed,—and all damages sustained by private individuals, for which there was a remedy, would have been settled and paid for by the railway company.

5. The master erred in the effect given by him to the resolution of the board of directors of the Passenger Railway Company of December 27, 1888, and the letter of the same date. from the Passenger Company to the president of the Traction Company. [5]

6. The master erred in holding that the Central Traction Company by entering upon High street, and therein constructing such motors, cables and other appliances, and the necessary apparatus and mechanical fixtures, including tracks for the traction of cars over and along said street, before a passenger railway had been constructed upon said street, exceeded the power granted by the act of the legislature under which it was incorporated, and therefore its entry on said street and the construction of its motors, cables, railroad, etc., was without authority of law and hence a nuisance. [6]

7. The master erred in recommending a decree in favor of plaintiffs. [7]

8. The master should have recommended a decree in favor of the defendants, dismissing the bill. [8]

The court, in an opinion by EWING, P. J., overruled the exceptions, and entered the following decree :

"And now, to wit, August 4, 1891, this cause came on to be heard at this term upon bill, answer, proofs, master's report and exceptions thereto, and was argued by counsel, and thereupon the exceptions to said master's report are dismissed and said report is confirmed absolutely, and it is considered, adjudged and decreed that an injunction issue under the seal of this court restraining and enjoining the defendants, their agents and servants perpetually from constructing and laying down upon High street between Wylie street (or avenue) and Webster street (or avenue) in the city of Pittsburgh, any track or

tracks, and from opening the surface of said High street, or digging upon the same for such purpose.

"And it appearing to the court that since the date of the filing of the original bill in this cause, and notice thereof to defendants, defendants have laid down and constructed their conduits, machinery and tracks upon said High street; it is further considered, adjudged and decreed that the said defendants take up and remove from said High street, between Wylie and Webster streets the said conduits, machinery and tracks heretofore laid down and constructed by defendants upon and under the surface of said High street, and restore and replace and repair the portion of said High street occupied by said conduits, machinery and tracks. And it is further considered, adjudged and decreed that the said defendants pay the costs of these proceedings, including the master's fee, which is now fixed at the sum of one thousand dollars ($1,000)."

*Errors assigned* were (1) in overruling demurrer; (2–9) in dismissing exceptions, quoting exceptions; (10) the decree, quoting it; and (11) in not decreeing a dismissal of plaintiffs' bill.

*W. A. Stone* and *P. C. Knox*, for appellants.—The bill was fatally defective on account of misjoinder of parties: Hudson v. Maddison, 12 Simon, 416; Cutting v. Gilbert, 5 Blatchford, 259; Hinchman v. Railroad Co., 2 C. E. Green, 75; Cumberland Valley R. R. Co.'s Ap., 62 Pa. 218.

Under the act of 1887, the railway company had the right to make a contract with the Traction Company to furnish power by a mechanical means to operate its railway.

The company had a right to contract under the act of February 13, 1870. A passenger railway company is a railroad within the meaning of this act: Hestonville Ry. v. Philadelphia, 89 Pa. 210; Millvale v. Evergreen Pass. Ry. Co., 131 Pa. 1; Mount Holly Paper Co.'s Ap., 99 Pa. 513.

The laying of street railway tracks upon a highway is not an additional servitude: Com. v. E. & N. E. R. R. Co., 3 Casey, 354; Mercer v. P. F. W. & C. R. R. Co., 12 Casey, 104; O'Connor v. Pittsburgh, 18 Pa. 189; Pennsylvania R. R. Co.'s Ap., 115 Pa. 526; Phila. & Trenton R. R. Co., 6 Wharton, 41; Faust v. Pass. Ry. Co., 3 Phila. 164; Hodges v. Pass. Ry. Co.,

58 Md. 603; Elliott v. Fair Haven R. R. Co., 32 Conn. 579; Williams v. Ry. Co., 41 Fed. 556; Halsey v. Ry. Co., 20 Atl. Rep. 859; Newell v. Ry. Co., 35 Minn. 112; Lockhart v. Craig Ry. Co., 139 Pa. 419; Taggart v. Newport Ry. Co., 7 Ry. and Corp. L. J. 385.

The right of access to the property of plaintiffs is not disturbed except at the moment a car is passing in front of the property; but the owners themselves cannot keep vehicles standing indefinitely in front of their property: Norristown v. Moyer, 67 Pa. 355; Rex v. Russell, 6 East, 427; Kellinger v. Railway Co., 50 N. Y. 206; Carson v. Railway Co., 35 Cal. 325; Hobart v. Railway Co., 27 Wis. 194.

The interference with the right of placing building materials. in the street is in no way a confiscation of plaintiff's property: Mallory v. Griffey, 85 Pa. 275; Piollet v. Simmers, 106 Pa. 95.

*Geo. Shiras, C. C. Dickey* and *George Shiras, 3d.,* with him, for appellee.—The bill was not multifarious: Story's Eq. Pl., sec. 271; Wier's Ap., 74 Pa. 230; Dilworth's Ap., 91 Pa. 247; Powell v. Powis, 1 Y. & J. 159; Daniell's Ch. Prac. 346; Persch v. Quiggle, 57 Pa. 247; Kunkle v. Markell, 26 Md. 390; Williams v. West, 2 Md. 198; Young v. Allegheny Oil Co., 10 Phila. 525; Shields v. Thomas, 18 Howard, 253; Brinkerhoff v. Brown et al., 6 Johns. Ch. 139; Dix et al. v. Briggs, 9 Paige, 595; Sizer v. Miller, 9 Paige, 605.

A number of persons may join as plaintiffs in a bill to restrain the collection of a tax illegally assessed: Sallade v. Township, 2 Pearson, 48; Dunne v. Deegan et al., 43 Pa. 334; Tyson v. School Directors of Halifax Township, 51 Pa. 9. If the nature of the transaction makes but a single suit convenient, the objection of multifariousness will not be sustained: City v. Trustees, 12 W. N. C. 477; Stewart's Ap., 56 Pa. 413; Penna. R. R. Co.'s Ap., 115 Pa. 514.

The defendants suffer special injuries, separate and distinct from the public: Edgwood Railroad Co.'s Ap., 79 Pa. 257; McCandless's Ap., 70 Pa. 210; Henry v. Deitrich, 84 Pa. 286; Sterling's Ap., 111 Pa. 35.

The Traction Company's entry was wholly illegal: Thomas v. Railroad, 101 U. S. 71; G. B. & M. R. R. v. Union Steam-

boat Co., 17 Otto, 98; T. & B. R. R. v. B. H. T. & W. R. R., 86 N. Y. 112; Com. v. Erie & Northeast R. R., 27 Pa. 351.

The act of 1887 does not give to the Traction Co. a right to enter upon the streets where another passenger railway company has never been constructed.

OPINION BY MR. JUSTICE GREEN, March 21, 1892.

We dismiss the first and second assignments of error, because we think that the cause of complaint is one that is common to all the plaintiffs, the right under which all claim is precisely the same as to each, the complaint of all is against the same defendant for the doing of acts which affected all alike and in the same manner, the defence set up is common to all the plaintiffs, and the testimony, proofs and decree are alike as to all the plaintiffs. It is not necessary to cite authorities to show that when all these matters concur a bill filed by several such plaintiffs against a common defendant is not multifarious.

On the merits of the case it is not contested that all the powers which the passenger railway company possessed were conferred upon the Traction Co. by the agreement between the two companies made December 27, 1888. It must also be conceded that the Traction Co. had full power, under the act of 1887, " to lease the property and franchises of passenger railway companies which they may desire to operate, and to operate said railways," and also " to enter upon any street upon which a passenger railway now is, or may hereafter be constructed, with the consent of said passenger railway company, and make, construct, maintain and operate thereon such motors, cables, electrical or other appliances, and the necessary and convenient apparatus and mechanical fixtures, as will provide for the traction of the cars of such passenger railway, and to enter into contracts with passenger railway companies to construct and operate motors, cables or other appliances necessary for the traction of their cars." Under the ample powers and rights conferred by the act of 1887 it cannot be doubted that the defendant company had full power and authority to enter into the contract in question with the Central Passenger Railway Co. The authority of the Traction Co., however, to do the acts complained of in this case is denied upon two grounds. One is that the power of the Traction Co. is limited

by the act of 1887 to laying tracks upon streets where tracks had already been laid, and therefore no entry for that purpose could be made upon any street in which the tracks of the railway company had never been laid. It is replied to this objection that the railway company had the undoubted right to lay tracks on High street, under their charter and the city ordinances giving consent. The master so found, and there is no question that his finding on that subject is correct. The first section of the charter authorized the construction of a railway along certain streets named, " and with such branch or branches as the said company may at any time adopt."

At a meeting of the directors of the railway company, held December 24, 1888, a resolution was passed, adopting certain branches to the main line, among which was one through High street in both directions. By an ordinance of the city councils, passed February 6, 1889, authority was given to the railway company to enter upon the several streets named, including High street, and to construct, maintain and operate its passenger railways thereon. By another ordinance of the same date the Central Traction Company was authorized to enter, with the consent of the Central Passenger Railway Company, upon any street upon which their railway now is, or may hereafter be, constructed, for the purpose of constructing, maintaining and operating in and upon any or all of said streets and avenues, such motors, cables, electrical or other appliances, and such necessary and convenient apparatus and mechanical fixtures as will provide for the traction of cars. We know of no reason to question the legal efficacy of any of these proceedings. The adoption of a branch through High street was made by the board of directors of the railway company at a meeting regularly held. The ordinances of the city councils were duly enacted by the proper authorities. Everything done was in strict conformity with all legal requirements, and, in our opinion, sufficed to clothe with authority of law all the acts of the several parties done in conformity with those requirements.

On December 27, 1888, a formal contract was entered into between the two companies, by which the railway company agreed that the Traction Company might enter upon any and all highways on which the tracks of the railway company

"now are or hereafter may be constructed, and may there construct, maintain and operate during the term of this contract, such motors, cables, electrical or other appliances, and such necessary and convenient apparatus and mechanical fixtures, as will provide for the traction of cars on the track of said Passenger Railway Company." The contract was to continue during the term of ninety-nine years, and contained other provisions as to details, and required the Traction Company to pay an annual sum of $26,250, in consideration for the rights and privileges granted by the contract. If this contract was within the power of the contracting parties to make, we cannot perceive the slightest reason for questioning the good faith, or the right of either of the parties to consent to its terms and become bound by them. It is not a matter of the smallest possible consequence whether either or both of the parties found it to their pecuniary advantage to enter into and to execute this engagement. The learned court below found that "the new route probably accommodates more people than the old one did, and the company has given rapid, frequent and comfortable transportation to the public, in place of the slow, infrequent and uncomfortable passage of the old passenger railway."

This being so, the public is a gainer by the transactions of the two companies, and their interests ought not to be sacrificed, except for plain and sufficient reasons.

The learned master was of opinion that because the railway company had not in point of fact laid a track or tracks upon High street, before the tracks were laid there by the Traction Co., the power to lay them did not exist under the agreement and ordinances, because the act of 1887, under which the defendant company was organized, only gave authority to lay tracks upon any street upon which "a passenger railway now is or may hereafter be constructed." The result of the reasoning of the master would simply be that if the railway company had first laid tracks on High street, the Traction Co. could lawfully make the contract in question, and enter upon the street, tear up the tracks previously laid by the railway company, and thereupon proceed to lay the cable tracks. It can hardly be that the question of statutory authority can be made to depend upon such a consideration as that. If it did, it

would only be necessary for the Traction Co. to take up its tracks, for the railway company thereupon to lay its tracks, and then for the Traction Co. to take them up and relay its own again. But, in our opinion, there is no occasion to resort to such a subterfuge. The plain meaning of the act is, that if, at the time of its passage, a railway track had already been laid, or if, thereafter, a railway track might legally be laid, by a passenger railway company, the Traction Co. could contract with the railway·company to construct motors, cables, etc., by means of which to run the cars. It would be absurd to say that, if the railway company was legally authorized to lay a horse-car track, but had not yet laid it, and desired to lay a cable track, it could not do so without first laying a horse-car track, and then contracting with a cable company to have the latter lay a cable track. If the cable track could lawfully be laid at all, and if the horse-car company had a legal right to lay a horse-car track, and also a legal right to have a cable track laid, instead of a horse-car track, it certainly cannot be that the prior laying and destruction of a horse-car track is a condition precedent to the right to lay a cable track.

The act of 1887 does not require any such strained and unreasonable construction. It is only necessary to read the word " may " before the word " hereafter," in the first section, in its ordinary sense, to understand the propriety of this reading. The master and the learned court below read the word " may " as if it were the word " shall," and inferred that the word was imperative, and implied that the railway track must have been actually laid in advance of the right to contract for a cable track; whereas, the word " may " does not necessarily import anything more than that a railway track may be laid; that is that there is a right to lay it. There is no doubt that the railway company had the right to lay a track on High street, at the time of the contract, and was not restricted as to the kind of track it should lay. Its power did not depend upon the act of 1887, and it is not possible to understand why the Traction Co., with a power to contract for the laying of a cable track, where a horse-car track was already laid, could not contract to lay a cable track where a horse-car track *may* be laid. Its right to do so comes within the letter of the act, and it is very plain that the act intended by the words, " or

may hereafter be constructed," to enlarge the scope of the powers of the traction companies, so as to embrace future development, as well as that which already existed. To hold, as the master and the court below held, would be to rule that the general powers of the traction companies were restrained by these words, "may hereafter be constructed;" whereas, they were plainly intended to enlarge them. This idea is confirmed by the concluding words of the first clause of the section, viz., "and to enter into contracts with passenger railway companies to construct and operate motors, cables or other appliances necessary for the traction of their cars." These words are general, and confer upon the motor companies the general power to contract with all passenger railway companies for the construction and operation of motors, cables and other appliances. No limitation is here placed upon the power to contract to do, practically, the same things which the previous clause of the section provided for. The generality of the construction we have indicated, for the first part of the section, is also strengthened by the eighth clause, of the powers specifically conferred by the concluding clause of the same section, to wit: "To lease the property and franchises of passenger railway companies, which they may desire to operate, and to operate said railways." Here, also, the power conferred is without any restriction, and embraces all passenger railway companies. The power to lease and operate the property and franchises of passenger railway companies necessarily includes all the franchises, rights and privileges of the company leased, and among these is, necessarily, such right to occupy streets and lay tracks as the leased company is possessed of. We are, therefore, of the opinion, that the right of the Traction Co., defendant, to enter into the contract in question in the present case, was fully conferred by the act of 1887, and cannot be restrained, as to the laying of tracks, to the laying of tracks only upon such streets as the railway company had already laid tracks upon prior to the making of the contract.

The learned court below went further than the master, and held that the railway company had no power to make such a contract as it did, because the contract was a virtual surrender of all the property and franchises of the company to another corporation, which could only be done under express statutory

authority, and such authority, the court held, did not exist as to the Central Passenger Railway Co. To this the defendant company replies, that the necessary statutory authority to make the contract in question does exist, and is conferred by the act of Feb. 17, 1870, P. L. 81. The learned court below admits that under our decisions in the case of the Hestonville R. R. Co. v. City, 89 Pa. 210, and Millvale Borough v. Evergreen Pass. Railway Co., 131 Pa. 1, the act of 1870 will apply to the Central Passenger Railway Co., but holds that under the rules of interpretation laid down in Gyger v. Philadelphia Railway Co., 136 Pa. 96, the act of 1870 was not intended to, and does not apply to passenger railway companies. We do not agree that there is any inconsistency in these several decisions. They, all of them, and especially the last one cited, hold that the terms " railway " and " railroad " are synonymous, and have no distinct and independent meaning in themselves, and that when either of the words is used in a statutory or constitutional provision, and the context is without indication that a particular kind of road is intended, the provision will be held applicable to every species of road embraced in the general sense of the word used. In the Gyger case we held that there was very clear indication in the context of § 4, article XVII of the constitution, that passenger railways were not intended to be included in the provisions of that section, and for that reason only we held that street railway companies were not included within the prohibition of the section. The considerations which led us to that conclusion are fully presented in the opinion, and they are in entire harmony with everything that was said and decided in the other two cases cited.

In the present case those considerations are not applicable, and we are entirely clear, upon the reasoning in all three of the cases, that the act of 1870 does include passenger railroad companies as well as steam railroad companies. The language is very general, and embraces all railroads without distinction. The court below was of opinion that, because it included railroads in other states, it could not have been intended to include passenger railroads in this state. We do not see the force of that inference. The power to contract for railroads in other states is especially given, because it would be necessary to give it by express mention, they being extraterritorial. But surely,

if without that enlargement of the subject-matter, the language of the act would embrace passenger railroads, the extension of the power to embrace railroads out of the state cannot operate to cut off or exclude passenger railroads within the state by mere implication. The words which extend the contracting power to roads out of the state are words of enlargement of power, not of restriction upon powers already granted by the act, and we cannot give them such meaning by mere intendment.

Another objection is made to the application of the act of 1870, because no continuous connection is made between the road of the passenger company, and any road of the Traction Co., and under the proviso of the act such connection is necessary before the act can operate. This raises a question not of construction of the act, but whether companies seeking to make use of it have brought themselves within its terms.

As the Traction Co. has no road of its own, there is much plausibility in this contention, but yet the question still remains whether the plaintiffs are in a position to sustain their bill on this ground. If they have no interest arising from a remediable injury, it is difficult to understand how they can invoke the aid of the law to correct an excessive exercise of power by making the lease or contract in question. If they have done that they are responsible to the commonwealth, but not to a private citizen, who has sustained no special injury for which he is entitled to redress. It has been many times held, and by many different courts, that the use of a public street for purposes of street railroads is not the imposition of an additional servitude, and does not entitle the abutting landowners along the street to compensation for such use. In the case of Lockhart v. The Craig Street Ry. Co., 139 Pa. 419, we affirmed the lower court in the following ruling: " It cannot be doubted at this day that the legislature of Pennsylvania has the power to authorize the incorporation of companies, with power to build and operate railways with horses over the streets of cities, with the authority and consent of the authorities of said cities, as provided by § 9, article XVII of the constitution. And it is too late to say that such use and occupation of the streets impose such an additional burden, or servitude thereon, as renders it necessary to provide for compensation therefor to the owners

of abutting property. . . . So far as the street use proper is concerned there is no substantial difference between the tracks of such a street railway and one operated by electricity. . . . And it may be now taken as settled that the owner's rights as to abutting property are subject to the paramount right of the public, and the rights of the public are not limited to a mere right of way, but extend to all beneficial legitimate street uses, such as the public may from time to time require. . . . Recognizing the right of the legislature and city authorities to authorize the building of railways upon the streets of a city without compensation to property owners, because it is a means of public transportation and accommodation, the necessary and proper apparatus for moving them must be allowed to follow as an incident, unless there is something illegal in its construction or use."

In Halsey v. Railway Co., 20 Atlantic Rep. 859, (court of chancery, New Jersey, 1890,) it was held that land taken for a street is taken for all time, and compensation is made once for all; and by the taking the public acquire the right to use it for travel, not only by such means as were in use when the land was acquired, but by such other means as new wants and the improvements of the age may render necessary; and that the question, whether a new method of using the street for public travel results in the imposition of an additional burden on the land or not, must be determined by the use which the new method makes of the street, and not by the motive power which it employs in such use. It was also held that the erection of poles in the centre of the street and on the sidewalk in front of the plaintiff's property, with connecting wires, for the purpose of applying electricity as a motive power to propel street cars, was not imposing an additional servitude upon the street, and that the owner had no cause of action.

In Williams v. Ry. Co., 41 Fed. Rep. 556, the court said: "The operation of a street railroad by mechanical power, when authorized by law, on a public street, is not an additional servitude or burden on land already dedicated or condemned to the use of a public street, and is, therefore, not a taking of private property, but is a modern and improved use of the street as a public highway, and affords to the abutting property holder, though he may own the fee of the street, no legal ground of complaint."

In the case of Briggs v. Railway Co., 79 Maine, 363, the court said: "We do not think the construction and operation of a street railroad in a street is a new and different use of the land from its use as a highway. The modes of using a highway, strictly as a highway, are almost innumerable, and they vary and widen with the progress of the community. . . . The laying down of rails in the street and running street cars over them for the accommodation of persons desiring to travel on the street is only a later mode of using the land as a way, using it for the very purpose for which it was originally taken. It may be a change in the mode, but it is not a change in the use. . . . We do not think the motor is the criterion. . . . This defendant company is using the land as a street. Its railroad is a street railroad. Its cars are used by those who wish to pass from place to place on the street. A change in the mode is not a change in the use."

All of this is strictly applicable to the facts of the present case. High street was a public street of the city before the defendant's tracks were laid, and it is so still. Whether the motive power of the cars be horses, electricity or a submerged cable, makes no difference in the use, and no one of these modes of use confers any right of action upon the abutting owner.

In Taggart v. Newport Street Ry. Co., 7 Ry. & Corp. L. J. 385, it was also held that a street railway operated by electricity imposed no new servitude upon the property owner, although poles and wires were erected in the street in connection with the railway. Laying a street-car track so close to the sidewalk that vehicles cannot stand, gives no ground for action: Kellinger v. Railway Co., 50 N. Y. 206.

It is claimed for the plaintiffs that their right of free access to their property along High street is interfered with, because vehicles cannot stand between the railway tracks and the curbing without interfering with the cars. But the right of the property owner in this respect is not at all changed. He has the same right, after the tracks are laid and the cars running, that he had before. It is a right which must be exercised in reason, whether there are car tracks on the street or not. In no circumstances does it confer the privilege of obstruction by unreasonable exercise. But the reasonable exercise of the

right gives no right to the street-car companies to arrest it. If, at any time, the owner has occasion for the presence of vehicles in front of his property on the street, to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purposes; and if, in such exercise of the right, the passage of street cars is impeded, the street cars must wait. Such stoppage of cars is a matter of hourly occurrence in all large towns and cities where street-car tracks are laid upon narrow streets, and it was proved on the hearing before the master that not only in Pittsburgh and Allegheny, but in Philadelphia, there are numerous instances of this kind. It was also proved that, in actual fact, there had been no trouble of this kind on High street since the cars were running, but the important question is as to the existence of the right of the owner, and not as to its abuse, by either the street-car company or the owner. For such abuse by the company, on the one hand, or the owner on the other, each is responsible, and each has adequate remedy. These principles are sustained by abundant authority, and they are the teachings of common sense. The same is true respecting the right of access to the pipes and mains lying under the surface of the street. Some of them were lowered slightly by the defendant company to make room for the conduit for their cables, and the connections were restored by the company. The right of future access to those pipes and mains by the owner remains precisely the same as it was before. A slight difference in the depth to which the owner must go, upon the very rare occasions when he may desire to make repairs, or new connections, is so very trivial that it must be regarded as damnum absque injuria. If for any reason, such as change of grade, by the municipal authorities, or to get below the frost, the pipes and mains require to be lowered, it certainly has never been supposed that the owners would have a right to recover damages against the municipality or other authority on account of such lowering of the pipes and mains.

We do not at all agree with the learned court below, that the occupation of the street by the tracks and motors of the defendant has diminished the value of the plaintiffs' properties from one third to one half. The testimony to that effect was chiefly the interested testimony of the plaintiffs themselves,

and was matter of opinion only, fortified by no actual facts. It was admitted by two of them that there was no change in the rental value of their properties, and that is as fair an actual test of market value as can ordinarily be shown. Other testimony was to the effect that there was no decrease of value in the properties, and this opinion was supported by instances of property sales in other localities where similar conditions existed. This subject, however, is not controlling, and is only alluded to because it was made the subject of a distinct finding by the learned court below, which we think was not justified by the testimony.

Upon the whole case, and a review of all the testimony, we are of opinion that the Traction Co. had ample authority, under the act of 1887, to make the contract with the Passenger Railway Co., and that whether the latter company exceeded its lawful authority by becoming a party to the contract is a question of the excessive exercise of power by a corporation, for which it is amenable to the commonwealth, but not to a private suitor, unless he has sustained a private injury, for which he has legal redress. We hold that these plaintiffs have not sustained such injury, and, therefore, have no standing to maintain their bill. We think, however, that in view of all the circumstances, the costs should not be imposed upon the plaintiffs, but should be borne by the defendant.

The decree of the court below is reversed, and the bill of the plaintiffs and all proceedings thereunder are dismissed and set aside, but all the costs of the case shall be paid by the defendant.