GEORGE P. DECKER, Appellant, *v.* J. EUGENE GODDARD, Respondent.*

Fourth Department, June 30, 1931.

*Herbert J. Menzie* and *George P. Decker* in person, for the appellant.

*Winchell & Cameron* [*Robert C. Winchell* of counsel], for the respondent.

TAYLOR, J. Plaintiff resides and his premises abut upon Plymouth avenue, south, one of Rochester's many beautiful streets. Defendant admittedly parked his automobile at the curb immediately in front of plaintiff's residence for a considerable number of days and for several hours a day, under a claim of right and against plaintiff's protest. Plaintiff brought this action to enjoin defendant from so doing. He has failed in his suit and the case is now here upon appeal.

The streets of a city, its highways, are primarily constructed and maintained for public travel, vehicular and pedestrian, and, generally speaking, for such use only.

" Streets must remain and be used as such and for no other purpose until otherwise directed by legislative enactment. Without this no authority exists for their invasion, or appropriation for a different purpose." " While property devoted to one public use may be applied to another, this can only be done when express authority is given for that purpose by the clearest provisions of law." (*People ex rel. Stranahan* v. *Thompson,* 98 N. Y. 6, 11.)

Street user of a minor and incidental character — other than for travel — user such as will not interfere with public or private rights or privileges — is permissible and is constantly indulged in without question. Temporary stops by vehicles at the curblines for social or business purposes are reasonable and are not interdicted. But even in these days of almost countless automobiles, the storing of a vehicle for a considerable period of time at a curb in front of an owner's residence may be a nuisance under the common law. (*D., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266, 272; *Holloway* v. *Southmayd,* 139 id. 390, 405, 406; *Cohen* v. *Mayor, etc., of New York,* 113 id. 532; 1 Am. St. Rep. 840 [n.];

11 Am. & Eng. Ann. Cas. 287; 17 id. 1128; 13 R. C. L. 220.) For this plaintiff, and all such abutting owners, are entitled to easements of access (ingress and egress), of light and air, and of the privilege of making observations, without unlawful obstruction, as to goings-on in the street. (*Bohm* v. *Metropolitan El. R. Co.*, 129 N. Y. 576; *Farley* v. *Mayor, etc., of New York*, 152 id. 222, 225; *Callanan* v. *Gilman*, 107 id. 360; 13 R. C. L. 142, 144; 33 A. L. R. 354, 361; 3 McQuillin Mun. Corp. § 1322.) And parking, such as impelled the bringing of this action — unless legally authorized by constituted authority — may be stopped or prevented by an abutting owner by injunction in an action in equity, if such abutting owner be specially damaged. (*Flynn* v. *Taylor*, 127 N. Y. 596; Elliott Roads & Streets, § 1171.16, p. 1649.83.)

In *Rex* v. *Cross* (3 Campb. 224) Lord ELLENBOROUGH said: " But every unauthorized obstruction of a highway, to the annoyance of the King's subjects, is an indictable offense. * * * A stage-coach may set down or take up passengers in the street, this being necessary for public convenience: but it must be done in a reasonable time; and private premises must be procured for the coach to stop in during the interval between the end of one journey and the commencement of another. No one can make a stable yard of the King's highway." This is a more modern version: " No one can make a private garage of the public street." (*Pugh* v. *City of Des Moines*, 176 Iowa, 593.)

*Lowell* v. *Pendleton Auto Co.* (123 Ore. 383) was an action for an injunction to restrain defendant from continuing a nuisance, the claim being that defendant stored and repaired its automobiles, both day and night, on Johnson street in front of plaintiffs' premises. The court said, in granting plaintiffs the relief asked: " We do not believe that the parking ordinances of Pendleton (which permitted unlimited parking along Johnson Street) were intended to convert the streets into repair-shops and storage spaces, disregardful of the protests of the abutter. A parking ordinance is nothing more than a police regulation which settles the matter only between the owner of the automobile and the city."

Our attention turns next to the question of statutory changes in the common law. The power to control and regulate the use of streets rests primarily in the Legislature. This power may be delegated to local authorities. " It is settled that, within constitutional limits not exactly determined, the Legislature may change the common law as to nuisances, and may * * * make things lawful which were nuisances." (*Commonwealth* v. *Parks*, 155 Mass. 531.) But the regulatory power never extends to unreasonable interference with public or private rights (*Bradley* v. *Degnon*

*Contracting Co.*, 224 N. Y. 60; Vehicle & Traffic Law, § 54), and local authorities have no right of control or regulation in the absence of legislative delegation.

Subdivision 4 of section 90 of the Vehicle and Traffic Law (as amd. by Laws of 1930, chap. 756, § 3) reads in part as follows: "4. In addition to other powers delegated by this article, and subject to the restrictions thereinafter provided, the legislative body of any city * * * is hereby empowered to make, enforce and maintain such additional reasonable ordinances, rules and regulations with respect to traffic as special local conditions may require, and to prescribe penalties therefor, provided proper notices of such regulations be posted conspicuously in the highways to which such regulations apply."

This is the general permissive statute applicable to the city of Rochester.

Section 86, subdivision 1, of the Vehicle and Traffic Law (as renum. and amd. by Laws of 1930, chap. 756, § 3) provides that municipalities may put into effect certain traffic regulations, among which is mentioned the establishment of safety zones and parking spaces for automobiles. We find nothing else in sections 86 or 88, or elsewhere in this law, which is applicable to the present controversy.

Parking is defined in section 3 of article 1 of the Ordinances of the City of Rochester (" Traffic Regulations ") of August, 1925, as " permitting a vehicle to stand in the street longer than necessary to receive or discharge passengers or load or unload merchandise." Section 40 of article 5 of the Ordinances reads thus: " Vehicles shall not be parked on any street in the limited district [which did not include plaintiff's residence] between 8 A. M. and 7 P. M. for more than one hour on any day except Sunday, nor park on any street at any time for more than six hours except as otherwise hereinafter designated by ordinance or by orders of the Commissioner of Public Safety."

This section does not establish a parking space pursuant to section 86, subdivision 1, of the Vehicle and Traffic Law. No other applicable parking regulation has been " designated by ordinance or by orders of the Commissioner of Public Safety," so far as the record discloses. The section quoted is not a permit by implication to citizens to park anywhere for six hours or less. A statute or ordinance granting the privilege of thus storing an automobile for many hours in front of a private residence would be clearly in derogation of the common-law rights of the resident. Wherefore, its permissive character must appear clearly — must be explicit, not tacit. (*Matter of McCoy* v. *Apgar*, 241 N. Y. 71, 77.)

For statutes in derogation of the common right are strictly construed in favor of him who has that right. (*Spencer* v. *Myers*, 150 N. Y. 269; 25 R. C. L. 1056; 1 McKinney Consol. Laws, "Statutes and Statutory Construction," § 148.) Section 40, article 5, is nothing more than a penal ordinance. In connection with section 102 of article 9 of said Ordinances it notifies people that if they park in any street (inclusive of that in which plaintiff resides) for more than six hours, they are subject to fine or imprisonment or to an action by the city for the recovery of a penalty. A privilege is not given, a prohibition is announced. The section is a notification that a violation of public or private street rights for more than a certain time may result in financial loss or penal punishment.

Defendant's admitted acts, those complained of, did not consist of temporary stops in front of plaintiff's home for social or business purposes. Although defendant enjoyed the privilege of walking to his destination — or of riding with another for hire or as an invitee gratis — or of utilizing his automobile and then stationing it while not in use in a public parking space on payment of a moderate fee — he chose to assert his claimed right to park his car day after day and for several hours at a time at the curb and directly in front of plaintiff's residence, well knowing that it greatly annoyed plaintiff. This conduct constituted willful and deliberate interference by defendant with plaintiff's easements, a persistent and reiterated violation of plaintiff's legal rights after being requested to desist, and then, upon refusal, after being warned by plaintiff that he would endeavor to obtain his rights by resort to the courts. A somewhat analogous situation is presented in *Adams* v. *Rivers* (11 Barb. 390). In that case Mr. Rivers did not use the sidewalk in front of plaintiff's premises as a thoroughfare for passing and, perchance, entering. He chose to utilize it for the purpose of stopping in front of plaintiff's home and uttering vituperative language of and concerning the plaintiff. This was regarded as so unjustifiable as to support an action for damages for trespass. If defendant had the legal right to thus station his automobile for the day, and day after day, then storied Tom, Dick and Harry had the same right — until plaintiff's frontage became fully fortified against the owner's various easement privileges, including temporary stops of business and social callers, plaintiff's view of street affairs, even plaintiff's stopping his own motor car at his curb in order that its occupants might alight and enter his home.

Such a violation of plaintiff's rights brought about a private nuisance and damage will be presumed. Direct proof of damage is not essential. (*Flynn* v. *Taylor, supra.*) In fact, plaintiff does not ask for financial compensation; he seeks only an injunction

order from this court, whereby defendant will be compelled to abstain from interfering with plaintiff's easement privileges.

It may be arguable — at least it is claimed in this case — that vehicular travel is now so extensive that long-existing rights of owners of city realty abutting on streets should yield to the convenience of automobile owners; that even exigencies now exist which in fairness demand that the ancient easements appurtenant to such abutting property ought to be abolished or curtailed. If this be so, the relief must come from the Legislature. The extent to which the lawmakers may go in this behalf is not here for discussion. (See, however, *Hatfield* v. *Straus*, 189 N. Y. 208.) Our duty ends when we have expressed our understanding of the instant common and statutory law of applicability.

The judgment appealed from should be reversed upon the law and facts, with costs, and a judgment should be entered for plaintiff for the relief demanded in his complaint, with costs. Certain findings of fact and conclusions of law are disapproved and reversed and new findings and conclusions made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiff for the relief demanded in the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.