## Clark v. City of New Castle et al.

*Alvah M. Shumaker* and *Joseph Leta, Jr.*, for plaintiff.

*William D. Cobau*, city solicitor, and *Gilbert E. Long*, assistant city solicitor, for defendants.

BRAHAM, P. J., May 25, 1938.—Plaintiff, a property owner, seeks to have enjoined as a nuisance a parking meter on the public street in front of his property, being erected and about to be operated under the authority of a city ordinance establishing that street as a parking-meter zone. The attack is on two grounds: First, that the ordinance under which the parking meter is being erected is illegal and void, and the construction of the posts and meters in the public street, therefore, a nuisance unjustifiable on any ground; second, that there were certain errors in the letting of a contract to the Municipal Equipment Company for the meters which rendered the contract illegal. The first of these objections is the more formidable and will be considered first.

At the outset it must be observed to be a rule of universal recognition that a private conveyance of land bounded by or abutting on a highway, the fee to which

belongs to the abutting owners, is presumed to take the fee to the center line of the highway subject to the public easement in the highway: Paul v. Carver, 26 Pa. 223; Oliver v. Ormsby, 224 Pa. 564; and see 2 A. L. R. 6. Notwithstanding this general principle, it is well established that the public has the superior right in the street, and its right extends to all uses connected with the passage of the public to and fro, the reasonable transportation of goods and persons, and the dissemination of information.

The extent to which the recognized property right of the abutter in an open street has been limited is most apparent from a brief survey of a few of the many cases on the subject. Neither in the surface nor in the subsoil are his rights paramount. In Wood v. McGrath, 150 Pa. 451, 455, in which plaintiff sought to enjoin defendants from maintaining by authority of the municipality a drain from a well under a public street, it was said:

"It may undoubtedly, either by itself, or by its delegated authority to others, dig up the soil to lay water pipes, gas pipes, sewers, drains, electric wires, telegraph and telephone wires, cables and doubtless subterranean railways, every one of which uses is in direct and exclusive hostility to the abutting owners' right in the fee. And the grant of these privileges may be made, and is constantly made, to other corporations or associations without the least regard to the will or consent or property right of the adjoining owner. He is not consulted about such matters. He has no right to prevent such uses if the public authorities agree to it; in short, he is not the unqualified owner of the subsoil of the street; and the cases are most rare where he has the opportunity to avail himself of his reversionary right resulting from the abandonment of the highway. . . . The streets and alleys of cities, towns and boroughs are under the control and direction of these municipalities, and they have all the power over them that can lawfully exist. They are the universally recognized channels of communication between the different parts of the municipal territory,

and no private interest in, or ownership of, the subsoil is permitted to interfere with the free use of both the surface and the subsoil by the municipal authorities or by their delegated substitutes. Any other doctrine would entirely frustrate all beneficial uses of the public streets and alleys of the cities, towns and boroughs of the Commonwealth."

The land taken for streets in cities and boroughs is in the exclusive possession of the municipality, which may use the footway as well as the cartway for any public service without further compensation to the lot owners: Pa. R. R. v. Montgomery County Passenger Ry., 167 Pa. 62. This is in contradistinction to the rule as to country roads. The easement acquired by the public in country roads is an easement for passage only. The owner is entitled to the possession of his land for all other purposes. Thus it was held in Sterling's Appeal, 111 Pa. 35, that the occupancy of a country road by a pipe line imposed an additional servitude upon the farm owner. But the construction of a street passenger railway upon the surface of a city street imposes no additional servitude upon the property fronting on the street so occupied: Rafferty et al. v. Central Traction Co., 147 Pa. 579. The reason for the rule allowing the municipal authorities wide control over the surface and sub-surface of city streets to the apparent detriment of the abutting property owners is well stated in McDevitt et al. v. People's Natural Gas Co., 160 Pa. 367, 374, in these words:

"Property in a city is no less sacred than property in the country. The title of the owner is neither better nor worse because of the location of his land. But its situation may subject it to a greater servitude in favor of the public in a large, compactly built city than would be imposed upon it in the open country. The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewers, gas and water mains, and any other urban uses. In taking the streets for these necessary or desirable purposes it is

acting not for its own profit but for the public good. It is the representative of the inhabitants of the city, considering their health, their family comfort, and their business needs; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers. If the city abridges his control over the soil in and under the streets, it compensates him by making him a sharer in the public advantages that result from proper drainage, from an abundant water supply, from the general distribution of gas, and the like."

On the same point see also Locust Street Subway Const., etc., 117 Pa. Superior Ct. 86, Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 275 Pa. 467, 470, and Shinzel v. Bell Tel. Co. of Phila., 31 Pa. Superior Ct. 221. The same principle becomes apparent upon inspection of cases limiting the rights of the abutting property owners in the land covered by the public way. Thus in Commonwealth v. Passmore, 1 S. & R. 217, it was held that an auctioneer was guilty of maintaining a nuisance when he exposed goods on the footway and cartway in front of his own store. In Commonwealth v. Wentworth, 4 Clark 324, it was held to be a public nuisance for a property owner to expose fruit on the sidewalk in front of his own store. And in Rachmel v. Clark, 205 Pa. 314, it was held that the owner of a slate factory had no right to use the sidewalk or an area apparently dedicated for sidewalk purposes for the storage of his products: See note, 6 A. L. R. 1314. In People of City of Dearborn v. Dmytro, 280 Mich. 82, 273 N. W. 400, 111 A. L. R. 128, a municipal ordinance prohibiting the use of streets and sidewalks for the purpose of furnishing curb service was upheld, although there was an ordinance allowing licensed peddlers to sell goods in the streets. In the interesting case of Yale University v. The City of New Haven, 104 Conn. 610, 134 Atl. 268, 47 A. L. R. 667, it was held that the university had no right to connect, by means of a bridge over the street, buildings which it owned on either

side of the street, but that the municipality had the power to authorize such use of the street.

It is out of conflict between the respective rights and duties of the property owner, the public, and the municipality as to city streets that the law on the subject, the expression of the public intelligence and the public will, emerges. As we approach more closely the consideration of the subject for decision, it is well to keep in mind the enormous growth of automobile traffic, the revolutionary change in the habits of our people worked thereby, and the tremendous demands made upon the public streets for space in which to drive and park automobiles. The courts must be careful not to apply the straitjacket to a growing economic and social organism. As was said by Justice McReynolds in Frost & Frost Trucking Co. v. Railroad Commission of California, 271 U. S. 583, 603, 47 A. L. R. 457:

"The States are now struggling with new and enormously difficult problems incident to the growth of automotive traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the federal Constitution."

The parking of many automobiles, other than those of the property owner or his guests, in the business sections of cities is a condition which exists, and there is overwhelming public pressure to allow such parking. It is just such a public custom as makes law if no law existed. In other words, so fixed have become the habits of our people on the point that it is difficult to conceive of any municipality forbidding entirely the parking of automobiles on public streets except the automobiles of abutting owners or those calling upon or having business with them. It is fortunately not necessary for us to decide any such academic question. It is sufficient to observe that the municipalities, recognizing the situation, have everywhere endeavored, by one sort of regulation or another, to control and regulate the parking of motor vehicles.

In City of New Orleans v. Calamari, 150 La. 737, 91 So. 172, there was upheld an ordinance prohibiting proprietors of taxicabs from using the public streets as a business stand but granting them the same right to park generally as other vehicles, although there was another ordinance prohibiting any vehicle to park more than 15 minutes: See note, 22 A. L. R. 113. As a result of many cases in many jurisdictions, the law in general may be stated to be that, "An abutting property owner has the right to park his own vehicles in the street in front of his premises, for the accommodation of himself, his customers, or his guests, in a reasonable manner and to a reasonable number . . . but he cannot ordinarily prevent others from also parking their vehicles there . . . except insofar as they unreasonably interfere with his right of ingress and egress . . . and therefore he has no right to grant to another the exclusive privilege, as against the public, of parking on the street in front of his property": 33 A. L. R. 355. Ordinances requiring the parking of vehicles in a specified manner upon the public street have often been upheld: Village of Wonewoc v. Taubert, 203 Wis. 73, 233 N. W. 755, 72 A. L. R. 224, note p. 229; Donovan et al. v. Pennsylvania Co., 199 U. S. 279. In Jones Beach Boulevard Estate, Inc., v. Moses et al., 268 N. Y. 362, 197 N. E. 313, 100 A. L. R. 487, traffic regulations forbidding U-turns on a highway and left turns except under certain circumstances were held not unduly restrictive of the rights of an abutting property owner, although the result was to make him travel five miles to reach a turning place, no substantial injury being shown. But the rights of abutting owners must be respected. Thus it has been held that the right of the abutter to access to and from the street is so fundamental that a city has no authority to lay a tax on the privilege of using or maintaining a driveway across the sidewalk to the abutting owner's property: City of Shawnee et al. v. Robbins Brothers Tire Co. et al., 134 Okla. 142, 272 Pac. 457, 66 A. L. R. 1047, note p. 1052.

This leads us directly to a consideration of the type of regulation involved in this case, namely, the use of parking meters as they affect the abutting property owners. But five cases have been cited on the point, and our researches have discovered no additional ones. In a Florida case, State ex rel. v. McCarthy, etc., 126 Fla. 433, 439, 171 So. 314, habeas corpus was brought to review the commitment of the relator for violation of a parking-meter ordinance. The ordinance was attacked as being unreasonable, as constituting a taking of property without due process, and as an abuse of the police power for revenue purposes. The court in sustaining the validity of the ordinance observed:

"That the aim of the ordinance is to regulate traffic and to keep such traffic as liquid as is reasonably possible, and that the cost of providing parking privileges, and the extra cost of supervising and policing parking, is placed by the ordinance where it belongs—on those who individually enjoy such privilege."

The Florida case was decided December 10, 1936. In an Oklahoma case decided shortly thereafter, Ex parte Duncan, 179 Okla. 355, 65 P. (2d) 1015, upon habeas corpus for one convicted of violating a parking-meter ordinance, the validity of the ordinance was sustained, notwithstanding a statute of Oklahoma, which provided that the local municipality should have no power to pass any ordinance requiring a fee for the free use of the public highway, saving the power of cities to enact general rules to bring about the ordinary passage of vehicles; the court in part said:

"The public has the absolute right to the free use of the streets. . . . The primary purpose is travel. . . . This, of course, includes the right to stop at the curb for the purpose of taking in or letting out occupants of the car, or for the purpose of loading or unloading merchandise. But a clear distinction is made between this use of the street and 'parking', which is held not to be an incident to public travel. . . . Consequently, many jurisdictions

adhere to the view that the city can prohibit parking absolutely, on certain congested streets, but could not prohibit the stopping of automobiles for purposes incident to travel." The court found that parking could be prohibited altogether.

"If the city has the power to regulate parking, it has the power to exact a fee of sufficient amount to cover the expenses of maintaining the regulation."

The subject was also considered in an opinion by the Supreme Court of Alabama, decided January 14, 1937, in the case of City of Birmingham et al. v. Hood-McPherson Realty Co. et al., 172 So. 114. This is one of two cases discovered in which the action was brought by a property owner for an injunction to restrain interference with his property rights by the use of parking meters. The case goes strictly on the nuisance theory and is perhaps distinguishable on the ground that there was a specific reservation in the grant of the streets to the municipality restricting their use to public use. The court, in discussing the rights of the abutters, used the following language:

"The right of access includes passage, accessibility, and stopping briefly and reasonably in front of premises without unnecessarily inconveniencing the passage of the general public (44 Corpus Juris, pp. 943, 944) ; and this right is applicable, not only to the passenger along the street or one desiring to approach and enter the premises, but also to the owner of those premises. The latter has the right to have his family, guests, or customers come and go within reasonable limitations and without the exaction of a fee or compensation. The right of egress and ingress is necessarily burdened with the right, within reasonable limitations, of parking a vehicle or car. The owner has the right to come and go, and park his vehicle alongside of his property (within reasonable limitations), without the exaction or payment of a tax or fee to the municipality, or to have his property defaced by

superimposed obstructions, barriers, or parking meters placed alongside."

On April 15, 1937, the subject was discussed in an opinion by the Justices of the Supreme Court of Massachusetts upon a request from the legislature for their opinion as to the validity of a proposed statute authorizing municipalities to pass parking-meter ordinances. The case is In re Opinion of the Justices, 8 N. E. (2d) 179. This entire opinion is to be commended for terseness and clarity. The distinguishing principle as pointed out is that:

"An ordinance which constitutes an unreasonable regulation of traffic or an unwarrantable interference with the right of access of the abutter would be invalid. Regulations cannot be authorized which purport to confer upon individuals rights of occupancy of the highway which in time, space or otherwise exceed the fair limits of the exercise of the public easement of travel."

Concluding, the justices stated:

"The conclusion is that within the limits of public travel, the General Court may regulate parking and may do so by a fee system intended to hasten the departure of parked vehicles and to help defray the cost of installation and of supervision. It is conceivable that under the proposed statute ordinances and by-laws may be drawn which would not by their enforcement violate constitutional rights."

The case of Harper v. City of Wichita Falls et al., 105 S. W. (2d) 743, decided May 14, 1937, by the Court of Appeals of Texas, is a case of an abutting property owner. The plaintiff was a jeweler occupying leased premises. A parkometer was placed in front of his store. After examining all the cases and distinguishing the Alabama case on the ground of the reservation in the deed, the parking-meter ordinance was upheld and an injunction refused.

Plaintiffs rely especially upon the fact that a fee is to be charged for occupying one of the parked spaces. All

the cases cited discuss particularly this feature and all allow it to be a reasonable thing to cast the cost of regulation upon those requiring it, excepting the Alabama case. As was pointed out in the Massachusetts case:

"It is not necessarily an infringement of the rights of individuals in public ways to charge a small fee for some legitimate special use to defray the cost of the special service afforded. That would be nothing more than the exaction of a toll which was familiar in the early days of highways. Toll bridges and tunnels are not uncommon": 8 N. E. (2d) 179.

It is clear that the device of parking meters cannot be used as a revenue measure. The amount charged must bear some reasonable relation to the service rendered and the cost thereof. At the hearing defendants developed that approximately $12,000 had been collected from these parking meters, that the cost was somewhat in excess of $25,000, that the meters would last for many years and apparently require but little repair. The conclusion is sought to be drawn that this is a revenue measure. No proof was presented as to the cost of such repairs as have been necessary; no proof was presented as to the compensation paid policemen to supervise the operation of the parking-meter system and no consideration is apparently given of the possible liability of the city by way of negligence in the operation of these parking meters. Yet, under the principles declared in American Baseball Club of Phila. et al. v. Philadelphia, etc., et al., 312 Pa. 311, the municipality might properly charge, as against the income from these parking meters, a reasonable part of the cost to the city of the services of the policemen detailed to manage them, and under the rule of Chester City v. Western Union Tel. Co., 154 Pa. 464, and Taylor Borough v. Postal Telegraph Cable Co., 202 Pa. 583, 584, possible liability to the city through negligence may also be considered. Thus, although such an ordinance is invalid if it is merely a means of raising revenue: Fort Pitt Gas Co. v. The Borough of Sewickley, 198 Pa. 201; in our opinion

there has been no showing of any such lack of proportion between the cost of the service rendered and the fee actually charged as to warrant us in concluding that the ordinance is illegal because the fee charged is excessive.

In the Massachusetts case the justices were concerned with the possible validity or invalidity of a statute authorizing parking-meter ordinances. Plaintiff in our case contends strongly that we have here no statutory background authorizing a parking-meter ordinance and therefore it is invalid. Three situations must be distinguished: First, where the legislature has clearly authorized the passage of the specific type of ordinance in question, every presumption is in favor of such an ordinance and the courts will interfere with it only in the clearest cases; second, the ordinance may be passed under a grant of power not specific but general, in which case, if the ordinance actually falls within the powers conferred or those necessarily implied from the general powers conferred, the same rule applies but the inquiry is broader; third, if the ordinance is passed under the general powers of the municipality without reference to any particular statute, our inquiry may be very broad. On this point the Supreme Court in Ligonier Valley R. R. Co. v. Latrobe Borough, 216 Pa. 221, said, by Stewart, J.:

"It is settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specific and defined character, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done, cannot be set aside by the courts because they deem it to be unreasonable or against sound policy: Dillon's Municipal Corporations, sec. 328."

But there is no lack of statutory background for the ordinance in question. Cities in general have the fullest measure of control over the city streets: Ellwood Lum-

ber Co. v. Pittsburgh, 269 Pa. 94, 95. The Vehicle Code of May 1, 1929, P. L. 905, sec. 1103, 75 PS §663, provides that "they may regulate or prohibit parking". Paragraph 17 of section 2403 of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198, lists among the corporate powers the right to regulate, among other things, "other devices or things, projecting over, under, into or otherwise occupying the sidewalks or other portion of any . . . streets", etc. It is not for the court, viewing the matter from some lofty height, to say whether the ordinance now before us is wise or unwise legislation. That is a matter for the council. It is a matter for the council and the people who elect the council to determine by the slow process of trial and error its ultimate wisdom. It is not to be expected that council may always, in the first instance, arrive at a wise decision. They have and must have some right of experimentation. There is a place for innovators in municipal as in other affairs. We must determine whether or not it comes within the powers granted. We believe the ordinance does.

A further objection of plaintiff may be briefly dismissed. It is that the rate charged for the parking meters should have been fixed by the Public Utility Commission. It has often been held that the Public Service Commission law did not make the municipalities public service companies: Commonwealth v. Kennedy, 129 Pa. Superior Ct. 149, 164; Setzer v. City of Pottsville, 73 Pa. Superior Ct. 573, 576. Therefore the Public Utility Law has no application.

The most weighty argument of plaintiff against this parking-meter ordinance and the one which has caused us most concern is the practical one. How much will this interfere with plaintiff's access to the street as an abutting property owner? Will this parking meter, erected pursuant to this ordinance, tip the scales so far in favor of the municipality as virtually to destroy the rights of the abutting owner? He has special rights as an abutting

owner: Lockhart et al. v. Craig Street Ry. Co. et al., 139 Pa. 419, 423. And these we are bound to protect. As was said in a street car case:

"If, at any time, the owner has occasion for the presence of vehicles in front of his property on the street, to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purposes; and if, in such exercise of the right, the passage of street cars is impeded, the street cars must wait": Rafferty et al. v. Central Traction Co., 147 Pa. 579, 593.

But let the matter be looked at in a sane and practical manner. Clearly the city has the right to permit parking in front of plaintiff's premises. When a car is parked the owner customarily and properly removes his key, thereby shutting off ignition and locking the steering wheel. A car so parked, for a period however short, is an obstruction to plaintiff's premises and, upon its moving out, may be replaced by a car moving in, especially in a busy street such as Long Avenue. This is true whether the ordinary parking or the parking-meter system is used. The only access the abutting property owner has in practice is in the intervals between times when other persons are lawfully parked in front of his premises. In the old days the truckers' team and wagon could be driven from in front of the premises, even by a stranger, when the owner desired access; the modern motor vehicle when parked is there to stay until its owner returns. Therefore, the system which keeps parked cars moving, which keeps traffic, in the language of the Florida case, most "liquid", is the best. The evidence in this case clearly shows, and we have found as a fact, that the effect of the parking meters is to keep the traffic moving.

Parking is defined in section 102 of The Vehicle Code as follows:

". . . 'Parking': The standing of a vehicle, except police or fire department vehicle or ambulance, whether

occupied or not, upon a highway otherwise than temporarily for the purpose and while actually engaged in loading or unloading, or in obedience to traffic regulations or traffic signs or signals."

The law thus recognizes the right of plaintiff, Mr. Clark, to stop in front of his place of business for the purpose of loading or unloading passengers or merchandise, but the law cannot guarantee him the right to do so whenever he desires. Such right cannot be guaranteed him except by refusing all other persons the right to park in front of his premises. This the exigencies and complexities of modern life will not permit. As in the New York case where the property owner was compelled to go five miles in order to turn around on a one-way street, some hardships must be undergone by those who enjoy the benefits of life in large communities. Counsel for plaintiff draw a dark picture of Mr. Clark shut out continually from his own property by the flow of nickels through this parking meter. They point out how the same person may put a series of nickels in and without detection keep his automobile standing for hours in front of Mr. Clark's premises. We cannot foresee the entire course of events and cannot prevent all possible abuses at this time. It was pointed out in Decker v. Goddard, 233 App. Div. 139, 251 N. Y. Supp. 440, that an ordinance prohibiting parking for more than six hours did not entitle one person to six hours' parking and the person who persisted in occupying the street in front of plaintiff's premises was enjoined. In Duquesne City v. Fincke, 269 Pa. 112, 122, the court pointed out that the proper course for one aggrieved by the enforcement of an ordinance was not by violating the ordinance but by mandamus to compel a proper obedience to it. Just so in this case, the courts will remain open to check abuses and to compel a proper and equitable administration of the ordinance. The ordinance here in question attempts to regulate "parking". This means parking as defined by The Ve-

hicle Code. Many of the bugaboos feared by plaintiff will prove harmless if this be kept in mind.

All the parking-meter cases speak of the necessity of regulating parking and of the right to charge those using the service the cost thereof. In American Baseball Club of Phila. et al. v. Phila., etc., et al., supra, like charges in connection with regulating traffic generally were expressly sanctioned. The novel feature of the parking-meter device is that not only does the nickel toll pay for the cost of regulation but it is the nickel itself which regulates. Rather than pay the nickel the motorist will park elsewhere than on the restricted street or will cut his stay short. Thus the toll does the work of many policemen. Perhaps the cost is too great and bears heaviest on those least able to pay, but those are matters of policy for the council rather than for the courts.

Passing to the second main contention of plaintiff, namely, that the contract was illegal because of lack of proper advertising and a proper ordinance authorizing the contract, because of improper execution of the contract, because of failure to endorse on the contract that an appropriation had been made for it, and because of other kindred reasons, and, therefore plaintiff should be granted his relief, this contention may be summarily disposed of. All the prayers of the bill are for private relief; they are for a mandatory injunction to remove the post and to abate the parking-meter paraphernalia in front of plaintiff's store as a nuisance; for an injunction against enforcing the parking-meter ordinance in front of plaintiff's store; for an order on the city to account for and pay over to plaintiff his share of the proceeds of this one meter; and for an ordinance enjoining the city from enforcing the ordinance as against plaintiff and his customers.

Relief granted in an equity case will not be broader than that prayed for: Mercantile Library Co. v. University of Pa., 220 Pa. 328; Stewart et al., Execs., v. Solo-

mon et al., 316 Pa. 236, 241; Lawrence v. King, 299 Pa. 568; Eddy v. Ashley Borough, 281 Pa. 4, 6.

Plaintiff knew all about the proposed installation of the parking meters; he was acquainted with the fact that the ordinance had been passed; he observed the installation of the parking meters uptown. According to the evidence, about five hundred parking meters were contemplated. He allowed more than 400 of them actually to be installed. The city officials who were representing him did all this and committed the city to this extent without his raising a hand. He has chosen to base his case upon his rights as a property owner and in connection with the parking meter actually in front of his premises. We have found him to be guilty of laches as far as objection to the letting of the contract is concerned. He has acted promptly as far as the installation of the parking meter in front of his own premises is concerned, and we have considered his grievance most carefully; but he has not acted with due diligence to prevent the city from entering into a contract illegally. It is not entirely clear whether the case of a property owner and the case of a taxpayer's bill may be combined: Chew et al. v. City of Philadelphia et al., 257 Pa. 589, 599. But in Sambor v. Hadley, Controller, et al., 291 Pa. 395, 410, it was stated that the rule of laches applies alike to a taxpayer's bill and a property owner's bill. The present plaintiff delayed six months while practically all of the parking-meter equipment was installed. We believe this to be a fatal delay as far as that feature of the case is concerned.

It was specifically stated a number of times at the trial that this is not a taxpayer's bill, but a proceeding by an abutting property owner for a mandatory injunction to abate a private nuisance. The nuisance could have been erected in front of Mr. Clark's property without warrant of law either as to the contract or as to the ordinance. The right to maintain a parking meter in front of his premises rests upon the ordinance. It does not matter where or how council got the parking-meter

paraphernalia. If he was not satisfied as to the way it was being purchased or installed he should have objected at the proper time. Entertaining these views, it is unnecessary to consider in detail plaintiff's objections to the letting of the contract.

*Opinion sur exceptions*

BRAHAM, P. J., June 10, 1938.—In our adjudication heretofore filed we refused to enjoin the construction of a parking meter in front of plaintiff's store. Exceptions have been filed to our adjudication and argued before the court in banc. The principal error now contended for is that the court should have granted plaintiff, as minimum relief, the right to park in front of his own premises without the payment of the fee.

This again involves a misapprehension as to the power and duty of the court. The court must not be asked whether this is a perfect ordinance or a proper ordinance or a wise ordinance, but only whether its passage was within the power of the council. There has been no operation of a parking meter in front of plaintiff's premises or in his neighborhood; therefore we cannot say that in operation the system has been unjust or inequitable as to him. The present complaint boils down to the contention that any ordinance is invalid which establishes a system of parking meters without allowing the abutting owners to park in front of their own premises, free from the exaction of the fee.

Again let it be said that the parking fee, presumably at least, represents only the cost of regulation to the municipality. Setting aside this consideration, therefore, plaintiff's proposal is that it is impossible to regulate parking at all without providing for the unique and special rights of the abutting property owner. Let us consider this contention. The legislature authorizes municipalities to regulate or prohibit parking. It is contended that if the municipality prohibited parking on this street the ordinance would be void unless some

special right of the abutting owners to park in front of their premises were recognized. Again it is a practical view of the matter which resolves the difficulty. Traffic on a narrow or busy street may be as effectually blocked by one parked automobile as by many, and, seeking as a result the free movement of traffic, it does not matter whether the offending vehicle is the parked automobile of an abutting property owner or of someone else; they are alike objectionable. Thus, when the legislature authorized a municipality to prohibit parking, it authorized a prohibition of all parking—abutting property owner or any other person. Reasoning by analogy, in the present case when the municipality forbade parking except for a specified time, and required the motorist to use one of these parking meters, we cannot say that the city was without justification when it treated the abutting property owner on an equality with the stranger. The gist of the matter is arrived at by an inquiry into the nature of the regulation. The matter of the fee is but incidental.

We are not prepared to say that the municipality might not pass an ordinance recognizing the peculiar rights of the abutting owner and treating him on a preferred basis. The point is, the municipality in this instance has not elected to do so. It is the best judge of whether it can regulate the traffic situation with which it is confronted and at the same time grant such special privileges to the abutting owner. The city council not having made such distinction, it is not for the court to read the exception into the ordinance.

Numerous exceptions have been filed to our findings of fact and conclusions of law and to the failure to rule on plaintiff's requests for conclusions of law. Our manner of handling plaintiff's requests and of making our findings and conclusions is in accordance with Equity Rule 67 of the Supreme Court and is, as we believe, unobjectionable. Further argument was had on the question of laches and on the right of plaintiff to relief not specifically prayed for; but nothing which has convinced us that the

position taken in the adjudication should be altered. Accordingly we make the following

### Final decree

Now June 10, 1938, upon consideration of the foregoing case it is ordered, adjudged, and decreed that plaintiff's exceptions numbered 1 to 46 inclusive are each severally overruled and refused, and the bill of complaint is dismissed at the cost of plaintiff.