THE STATE EX REL. CHARLES CARL NIGRO v. KANSAS CITY ET AL.
—27 S. W. (2d) 1030.

Court en Banc, May 15, 1930.

*John T. Barker* and *Wm. H. Allen* for appellants.

*James A. Reed, Julius C. Shapiro, Maurice J. O'Sullivan* and *James E. Taylor* for respondent.

RAGLAND, C. J.—An appeal was allowed by the trial court in the above entitled cause, but as that court refused a stay of the judgment pending such appeal, the defendants applied for, and were granted, a special appeal by this court with supersedeas. The two appeals were subsequently consolidated and were argued and submitted as one cause. The judgment appealed from was one rendered by the Circuit Court of Jackson County, annulling an order of the Kansas City Board of Zoning Appeals, and directing the issuance of a building permit in contravention of such order The facts so far as need be stated are few and simple.

Respondent, Nigro, owned a parcel of ground at the northeast corner of the intersection of 71st and Oak Streets in Kansas City: it had a frontage of 400 feet on the north side of 71st Street and extended back north along the east side of Oak Street a distance of 127.67 feet. There were no buildings on the lands immediately adjacent to respondent's holding, and the territory generally in its vicinity was undeveloped and but sparsely settled, though it had been zoned. Respondent's ground was in a use district in which no building could be erected or used for business purposes under the Kansas City Zoning Ordinance: it was in a district in which the uses of buildings were restricted, generally speaking, to residential purposes. The northwest and southwest corners of the intersection of 71st and Oak Streets were in a retail business district; respondent purchased his ground after the territory had been zoned and at the time he purchased he knew that it was in a residential district, and that the erection of buildings thereon for business purposes was prohibited. However, he had observed, so he says, that other "corners" in residential districts had frequently been "rezoned" so as to permit the erection of buildings for business uses, and he assumed that he could have the corner where the ground which he purchased lay so rezoned; but he did not take the precaution to ascertain whether the rezoning could be effected before purchasing. He took the chance.

Shortly after purchasing the ground hereinbefore described, respondent, on April 19, 1929, applied to the Building Commissioner of Kansas City for a permit to erect thereon a one-story building to be used for business purposes. The application was denied on the ground that the site on which he purposed to erect such build-

ing was within a district restricted by the Zoning Ordinance to exclusively residential uses. He thereupon appealed from the order of the Commissioner refusing him a permit to the board of Zoning Appeals, and that body after a public hearing affirmed the order of the Commissioner. Respondent then procured a review of the action of the Board of Zoning Appeals by the Circuit Court on certiorari; that court after an extended hearing rendered the judgment appealed from.

At the time respondent applied for the building permit in question plans had been inaugurated, and were beginning to be put into execution, for developing the territory in the immediate vicinity of his holding into residential districts; it was respondent's idea that those districts would be served by what he termed a ''civic center'' at the intersection of 71st and Oak Streets, the northwest and southwest corners being in a business district; for that reason he thought his property would be more valuable for business than residential purposes; and he averred that, if refused a permit to erect a store building thereon, he would sustain a loss of $15,-000, that is, in the way of profit. Fifteen thousand dollars may therefore be said to be the amount in dispute; hence our jurisdiction of this appeal.

The Zoning Ordinance of Kansas City is typical: it divides the city into use, height and area districts, and imposes in connection therewith regulations, restrictions and prohibitions ''for the promotion of the public health, safety, comfort, convenience, prosperity and general welfare,'' in respect to the erection of buildings and other structures. Section 21 of the ordinance provides:

''This ordinance shall be enforced by the Superintendent of Buildings under the rules and regulations of the Board of Zoning Appeals. . . . Any decision of the Superintendent of Buildings made in the enforcement of this Ordinance may be appealed to the Board of Zoning Appeals by any interested person or by any officer of the city. The various requirements hereinbefore provided shall be held to be general rules and regulations for the promotion of the health, safety, comfort, convenience, prosperity and general welfare. Whenever, in any specific case, the Board of Zoning Appeals after public notice and hearing thereon, shall find and determine that the application of a general rule or regulation to the particular case under consideration will, by reason of exceptional circumstances or surroundings, constitute a practical difficulty or unnecessary hardship, and that the general purpose and intent of such rule or regulation may be preserved and that the public health, safety, comfort, convenience, prosperity and general welfare may, in so far as provided in this ordinance, be secured by a specific modification or partial suspension of the application of such rule or regulation to the specific case under consideration, the Board may upon affirmative vote of five members make an order permitting

such modification or partial suspension. In making such order the Board may impose such terms and conditions as may be in harmony with the purpose and intent of this ordinance.

"The lawfulness, justice and reasonableness of any finding, determination or order of the Board, upon application of any interested person, or by any officer of the city, may be inquired into and determined in the Circuit Court of Jackson County, Missouri, by way of certiorari or writ of review."

The ordinance just referred to was adopted June 4, 1923. Subsequently, in 1925, the Legislature passed what has been designated the "Enabling Act." [Laws 1925, pp. 308-313.] It empowers all incorporated cities, towns and villages in the State to enact zoning ordinances in conformity with its provisions. Section 5 of the Enabling Act provides:

"Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change duly signed and acknowledged by the owners of ten per cent or more, either of the areas of the land (exclusive of streets and alleys) included in such proposed change or within an area determined by lines drawn parallel to and one hundred and eighty-five (185') feet distant from the boundaries of the district proposed to be changed, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. . . ."

Section 7 of the Act contains, so far as pertinent here, the following provisions:

"Such local legislative body shall provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this act may provide that the said board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. . . . The board of adjustment shall have the following powers: . . .

"3. In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done. In exercising the above mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

. . . Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any officer, department, board, or bureau of the municipality, may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. . . . The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review. . . .''

And Section 10 of the Act is as follows:

''Wherever any municipality pursuant to an act of the legislature of this state shall have adopted an ordinance or ordinances for any of the purposes covered by this act, such ordinance or ordinances shall be deemed to have been adopted under the provisions of this act, and it shall not be necessary in such cases for the local legislative body to appoint a zoning commission as herein provided. All such ordinances shall remain in full force and effect, except so far as they shall be inconsistent with the provisions of this act, until they shall have been amended, altered or repealed by such legislative body.''

Section 12 of the Act provides that acts found in the Laws of 1921 ''and all other acts and parts of acts in conflict with the provisions of this act are hereby repealed.''

Appellants' assignments of error can be disposed of under two general heads: (1) The powers which may be exercised by the Board of Zoning Appeals, and (2) the circuit court's jurisdiction in reviewing an order of that board on certiorari.

I. It is to be first noted that the Zoning Ordinance must be read and construed in connection with the Enabling Act: the former, if in any respect inconsistent with the latter, is to that extent a nullity. The Board of Zoning Appeals is entrusted with the duty of enforcing the provisions of the ordinance: it is an administrative body—without a vestige of legislative power. It cannot therefore modify, amend or repeal what the ordinance itself designates as its ''general rules and regulations:'' the power to do that is conferred upon the Common Council of Kansas City, and it can delegate no part of that power. The ordinance does not purport to authorize the Board of Zoning Appeals to modify, amend or repeal any of its provisions; but it does permit and direct the Board to modify or partially suspend a rule in its application to a particular case where strict enforcement would ''by reason of exceptional circumstances or surroundings constitute a practical difficulty or unnecessary hardship.'' This provision must be read in connection with Section 7 of the Enabling Act, which provides that the board of adjustment shall have the power, ''where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regu-

lations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or to the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.'' In other words, if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application. But the Board can, in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they can not merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance. [State v. Christopher, 317 Mo. 1179, 1196, 298 S. W. 720.]

The application of the Zoning Ordinance to respondent's property created no ''practical difficulties'' and entailed no ''unnecessary hardship'' within the meaning of the Ordinance and the Statute. What he in fact asked the Board of Zoning Appeals to do was to ''rezone'' the corner on which his property is located, that is, change the boundaries between the residential district in which it is situated and the adjoining business district so that his lot would fall within the latter district. This, as already pointed out, the Board was powerless to do: the Common Council only is authorized to change the boundaries. [Sec. 5, Enabling Act.] If the Board has heretofore attempted such rezoning, as the record suggests, its acts in that respect were nullities.

II. The review of a decision of a board of zoning appeals by the circuit court being purely statutory, the court's jurisdiction in such proceeding does not extend beyond that conferred by the statute. Looking to the statute it is apparent that the court is not vested with the power to supervise the discretion lodged with a board of zoning appeals: it is not authorized to entertain a hearing *de novo* and then make such order as in its opinion the board should have made. The court's authority is plainly limited to correcting illegality. If the court finds the order under review illegal, in whole or in part, it may reverse or affirm, wholly or partly, or may modify, the order—as may be necessary in order to correct the illegality. As the board of zoning appeals in this case was wholly without the power to grant the relief sought by respondent, its order denying such relief could not in any respect have been illegal.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to enter its judgment affirming the order of the board of zoning appeals. All concur.