**Marie E. REISER, Louisa Rott, and Eathel M. Yeates (Plaintiffs), Appellants,**

**v.**

**John MEYER and Peter Meyer, a Partnership, Doing Business as Meyer Brothers Automatic Heating Company, and Gravois Shoes, Inc., a corporation, Doing Business as Hill Brothers Self Service Shoe Store (Defendants), Respondents.**

**No. 30018.**

St. Louis Court of Appeals.

Missouri.

April 21, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied May 21, 1959.

Opinion Modified on Courts Own Motion May 21, 1959.

Edward C. Schneider and William G. O'Donnell, St. Louis, for appellants.

Richard D. Fitzgibbon, Jr., J. Leonard Schermer, St. Louis, for respondents.

RUDDY, Judge.

Plaintiffs in their petition seek to enjoin and restrain the defendants and each of them from carrying on a business or businesses on property located at 8805 Gravois Avenue in an unincorporated area of St. Louis County, Missouri, without first obtaining and providing adequate parking facilities as required by Zoning Ordinance No. 542 of St. Louis County, Missouri. From a judgment denying an injunction plaintiffs have appealed.

Defendants, John Meyer and Peter Meyer, are the owners of the property located at 8805 Gravois Avenue and in the basement of the building of this property they operate a business known as Meyer Brothers Automatic Heating Company. Defendant, Gravois Shoes, Inc., a corporation, doing business as Hill Brothers Self-Service Shoe Store, is engaged in the retail shoe business and occupies the ground floor of said building.

Plaintiffs, Marie E. Reiser and Louisa Rott, are the owners of property known as 8801 Gravois Avenue, which is adjacent to and east of the property occupied by defendants at 8805 Gravois Avenue, and plaintiff, Eathel M. Yeates, is owner of property known as 8809 Gravois Avenue, which is adjacent to and west of 8805 Gravois Avenue.

The dimensions of the lot on which the building in question is located are 50 feet by 120 feet. The outside dimensions of the building as reflected in the "Application For Building Permit" which was filed July 20, 1955, are 45 feet by 60 feet. There is no dispute in the record concerning the dimensions of the lot or the building in question. In the Application For the Building Permit the applicant John Meyer failed to show the available parking space for cars and the needed parking space for cars although the application called for that information. The Application for the Permit did not show the contemplated use of the building other than the statement "Metal Shop" in the space for Miscellaneous Remarks. A permit to erect the building was issued by the County of St. Louis and after completion of the building an occupancy permit was issued on January 31, 1956.

All of the properties referred to hereinbefore are in an unincorporated area of

St. Louis County and are subject to Ordinance No. 542 of St. Louis County which is a zoning ordinance. The property in question, 8805 Gravois Avenue, was classified for zoning purposes as "I. Business District." The pertinent provisions of Zoning Ordinance No. 542 to the points raised by plaintiffs are as follows:

"Article I.

"For the purpose of promoting the health, safety, morals, comfort or the general welfare, to conserve and protect property and building values, to secure the most economical use of land, and to facilitate the adequate provision of public improvements, it is hereby provided as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Article III
"Definitions

"For the purpose of this Order (Ordinance) certain terms and words are hereby defined.

\*　　\*　　\*　　\*　　\*　　\*

"36. *Parking Space, Automobiles:* A durable, dust-proof, surfaced area, enclosed in the main building, in an accessory building, or unenclosed, sufficient in size to store one (1) automobile, and if the space is unenclosed, a durable dust-proof surfaced area comprising an area of not less than three hundred (300) square feet including the necessary driveway and space between automobiles on the parking lot. \* \* \*"

Article IV divides the unincorporated area of St. Louis County into twelve districts. The districts were classified into Small Farm District; Single, Two Family, and Multiple Dwelling Districts; " 'H.' Local Business District"; " 'I.' Business District"; Light Industrial District; Heavy Industrial District; and a Resort District.

Article XII ("H" Local Business District Regulations) provides inter alia the following:

"Section 3. *Parking and Loading Space Regulations.*

"(a) The Parking regulations for each family unit in the 'H' Local Business District shall be the same as those provided for in the 'G' Multiple Dwelling District.

"(b) All commercial buildings shall be provided with parking spaces upon the lot or on a lot having its nearest boundary line within 300 feet of the establishment in the ratio of not less than three (3) parking spaces for each three hundred (300) square feet of floor space in the building which is used for commercial purposes, \* \*"

Article XIII ("I" Business District Regulations:) provides inter alia the following:

"Section 2. *Use Regulations:* A building or premises may be used for any purpose except the following:" (Here follows a list of 20 businesses not permitted in "I" Business District.)

\*　　\*　　\*　　\*　　\*　　\*

"Section 5. *Parking and Loading Space Regulations:* The parking and loading space regulations for dwelling and commercial buildings are the same as those in the 'H' Local Business District. (Article XII)."

The evidence in behalf of plaintiffs showed that when construction of the building at 8805 Gravois Avenue was commenced some complaints were lodged with the Building Regulation Authorities of St. Louis County. However, these complaints were about matters other than providing parking facilities. After the building was completed and the defendant Gravois Shoes, Inc., began the operation of the retail shoe store the customers of the businesses in the properties 8801 and 8809 Gravois Avenue found it increasingly difficult to park their automobiles in the vicinity of the stores in the buildings on those properties. Plaintiffs' witnesses testified that prior to the

occupancy of the building at 8805 Gravois Avenue by the shoe store, their customers had no trouble in finding parking spaces for their automobiles. However, subsequent to the shoe store's occupancy parking facilities became "terrible." The owners of the businesses in properties at 8801 and 8809 Gravois Avenue testified that they lost business because of the automobile parking difficulties created by the shoe store.

Plaintiffs' evidence further showed that approximately five automobiles could be parked in front of 8805 Gravois Avenue and approximately six automobiles could be parked in the rear of said property. Access to the rear portion of the property can be gained "through the alley." There is no side driveway leading to the rear.

Plaintiffs' evidence further showed that a complaint about the parking conditions and defendants' failure to provide the amount of parking space called for under Ordinance No. 542 was made to the St. Louis County Planning Commission in June of 1956. A lawyer representing one of the plaintiffs wrote a letter to the St. Louis County Planning Commission, wherein he said, " * * * there is a flagrant violation of the building permit for this building at 8807–05 Gravois in that the regulations concerning off street parking have been ignored. This has resulted in a big parking mess at my client's place of business."

The principal witness produced by plaintiffs was Edward Walton, Deputy Zoning Officer of St. Louis County since 1952. He described the building located on the premises known as 8805 Gravois Avenue as a "one story building." He testified four cars could be parked in the front and six cars in the rear of the building, pointing out that 300 square feet are needed for each automobile. He gave the dimensions of the parking space in the rear as 38 feet by 50 feet (1,900 square feet). When asked how many spaces for automobiles were needed under Zoning Ordinance No. 542 for the building at 8805 Gravois Avenue, he answered, "I would say about twenty-seven

cars." As heretofore shown, the dimensions of the building were 45 feet by 60 feet. It is obvious from the aforesaid answer of this witness that he had in mind that parking facilities were needed only for one floor of the building, namely, the retail shoe store occupying the first floor, which, based on the aforesaid dimensions, has a total of 2,700 square feet and would require parking space under the ordinance for 27 cars. Manifestly he did not consider the sheet metal business in the basement of the building as the user of space requiring "Three (3) parking spaces for each three hundred (300) square feet of floor space in the building which is used for commercial purposes, * * *" as called for in the ordinance.

The witness testified that as a result of complaints received about the parking situation he made an inspection and submitted a report to the Public Works Director. In connection with the use of the basement he reported the following:

"The basement area is utilized by the Meyer Brothers for sheet metal work and garage purposes for trucks. There is no need for off-street parking for this business. Material is prepared in the basement to take out on jobs. The entire rear yard, 38′ X 50′ is rocked and could be utilized for off-street parking if the customers would drive around the back of the store and come in through the alley."

His report also showed that "There is off-street parking in front of the store to accommodate five automobiles." He further testified that in a letter to the Meyer Brothers he told them they would have to make arrangements to acquire additional off-street parking to accommodate the automobiles and that to his knowledge no action was taken by them. He pointed out that the portion of the building occupied by the Meyer Brothers Automatic Heating Company was not used for retail sales.

Plaintiffs concluded their evidence in the case on February 20, 1957, at which time

the defendants filed a motion "to enter judgment for defendants." No submission of the case to the court is shown in the record. However, the record shows that on August 16, 1957, the court made the following entry: "submission of cause set aside. Cause set down for further hearing on Sept. 5, 1957, to permit the introduction of evidence as to additional parking space, if any, now provided by defendants." Pursuant to said order further trial was resumed on September 5, 1957.

Robert Schwartz, employed by Gravois Shoes, Inc., as District Supervisor, after describing the space in the retail store used for storage, lavatory and other purposes not directly devoted to the selling of shoes, testified, that the number of square feet used in the shoe store "for commercial purposes" was 2,146. He gave the inside dimensions of the store as 43 feet by 58 feet after he made a deduction from the outside dimensions for 12 inch walls. In arriving at this figure of 2,146 square feet he eliminated from the total square footage in the store, space taken up by a stairwell leading to the basement, space used for the lavatory and also space across the rear and sides of the building he said could not be used. He also eliminated the space occupied by the electrical fuse box which serves the entire building. The square footage in the space which he eliminated from the total footage numbered 348.

The witness further testified that in addition to the parking space available in the front and rear of the store the shoe store has a "parking lot across the street from the store." He said a sign is painted on the window of the shoe store which reads "Free Parking Across the Street." Another sign painted on the window reads "Parking in the Rear." In addition to the aforesaid signs he said there was a large metal sign at the entrance to the parking lot which reads "Hill Brothers Customer Parking Only."

John Meyer, one of the owners of 8805 Gravois Avenue and a defendant in this case, testified that he had leased a lot across the street for parking purposes. This lot adjoins and is west of the Crest Theatre and was leased from the owner of the Crest Theatre on July 1, 1957. The dimensions of the lot are 41 feet by 165 feet and according to the witness it would accommodate at least twenty cars. He admitted he did not have this available parking space at the time the suit was filed. When asked if he policed the parking lot across the street to make sure no unauthorized persons used this lot, he answered: "No, I do not. But I know that the other people use it on either side of me."

He said the area in front of 8805 Gravois Avenue available for parking was 19 feet 6 inches by 50 feet and the area in the rear was 37 feet by 50 feet. The distance of 19 feet 6 inches given as one of the measurements in front of the building was measured from the curb of the highway to the sidewalk.

He further testified that he was "in the heating and sheet metal business" for "builders and such like." He said they have no retail business as such and in a period of 2 years only 3 customers visited the place of business. The business has two employees in addition to the two owners and there is seldom anyone at the place of business, which occupies the basement of the building at 8805 Gravois Avenue. The entrance to the business establishment in the basement is from the rear. There is no other entrance. The witness was asked about an easement for highway purposes within this measurement of 19 feet 6 inches and he said he did not know if there was an easement.

Jewett Yeates, a rebuttal witness for plaintiffs, said he saw the sign erected on the parking lot across the street possibly three or four weeks before he testified. The sign he referred to was the one showing "Hill Brothers Customer Parking Only." He said the Hill Brothers Shoe Store was open until 9 p. m. and the theatre opened at 6:30 p. m. He further testified the the-

atre patrons used the lot leased by the defendants, John Meyer and Peter Meyer, and at times these patrons "fill up that lot." He could not say what time "the lot is filled with theatre parking." He admitted the "show customers" park on his lot, pointing out that people are going to park as close as they can to the places they wish to visit.

Walter Reiser, another rebuttal witness for plaintiff, testified there were only 18 available parking spaces on the lot west of the Crest Theatre. He was then asked about the available parking spaces for cars on the lot east of the Crest Theatre. An objection to this question was sustained by the court. Plaintiffs then made the following offer of proof.

"Mr. O'Donnell: By this witness it would be proven that there are a total of 61 parking spaces in the east lot of the Crest Theatre, and that the parking spaces for the Crest Theatre prior to renting the west lot to the Meyer Brothers Heating and Sheet Metal Works was a total of 79. It would also be proven, by agreement of counsel, that there are 1000 seats in the theatre; is that correct?

"Mr. Fitzgibbons: I talked with Mr. O'Donnell briefly and he stated he would be willing to agree there are 1000 seats in the Crest Theatre, if in Your Honor's opinion it is relevant in this case.

"The Court: I think it is not relevant.

"Mr. Fitzgibbons: And I would like to renew our objection.

"The Court: Sustained."

We shall take up for examination the points relied on by plaintiffs in the order in which they appear in plaintiff's brief. The first point for consideration presents the contention that the Zoning Enforcement Officer of the County of St. Louis had no authority by the issuance of a building permit and an occupancy permit to alter or amend the zoning ordinance. Defendants do not seriously challenge this contention. They are inclined to agree with this statement if it does not take from the Zoning Enforcement Officer the authority to interpret the provisions of the zoning ordinance. We know of nothing in the action of the Zoning Enforcement Officer, as disclosed by the evidence, that could be construed as an effort on his part to alter or amend the parking space provisions of the zoning ordinance. It is true the building permit was issued despite the failure of the applicant to show the available and needed parking space for cars as called for in the application. However, after the building was completed and a complaint was received by the Zoning Enforcement Officer and after making an inspection of the off-street parking situation as it pertained to 8805 Gravois Avenue, he ordered the owners of the building to provide additional off-street parking accommodations. While there was some delay in providing the additional parking accommodations, nevertheless it is a fact there is now sufficient space provided according to the interpretation given the zoning ordinance by the Zoning Enforcement Officer, which interpretation meets with our approval as will be observed in a further reading of this opinion.

The record discloses no intention on the part of the Zoning Enforcement Officer to alter or amend the zoning ordinance. For the reason just stated we need not discuss the authorities cited by plaintiffs holding that officers such as the Zoning Enforcement Officer of the County of St. Louis have no power to amend or repeal the ordinance. The Zoning Enforcement Officer made no effort to either amend or repeal the ordinance.

The principal contention of the plaintiffs is embodied in their next point wherein they assert "There was no showing made by defendants either by their own evidence or by all the evidence viewed in the light most favorable to defendants proving that they had even substantially complied with the

parking requirements of the Zoning Ordinance." The success of this contention as asserted by plaintiffs depends on this court finding that the basement of the building in question, wherein the owners of the building operate a heating and sheet metal business as described by defendant, John Meyer, is being "used for commercial purposes." The Ordinance (Article XII, Section 3(b)) requires that "not less than three (3) parking spaces for each three hundred (300) square feet of floor space in the building which is used for commercial purposes" be provided. We agree with the defendants that "the crux of the case at bar is the interpretation of the words 'commercial purposes.'" The ordinance defines many words and phrases as used in the ordinance, but the phrase "commercial purposes" is not among them. It is necessary to look elsewhere for the meaning of this phrase as intended by the legislative body that enacted the ordinance.

The building involved in this controversy is located in a district which had been classified for zoning purposes as "I" Business District. Under Article XIII of the Ordinance, which regulates the use of buildings that are permitted in "I" Business District, the building may be used for any purpose except those business uses specifically enumerated. This means that the building may be used for single and multiple dwelling purposes, and light and heavy industrial purposes if they are not specifically prohibited in the noted exceptions. In other words the building can be put to any use other than those specifically prohibited. This means the building in question may be used for a commercial as well as a non-commercial purpose.

■ It is our duty to place an interpretation on this ordinance that will fulfill the intention of the legislative body by which it was enacted. In seeking this intention it is our duty to construe the ordinance so as to accomplish the purpose for which the ordinance was passed. After

the purpose the legislative body had in mind is determined we should then adopt the interpretation which best fulfills the legislative purpose. It is our opinion that the legislative body intended only to require off-street parking space for such businesses as had customers who used automobiles in visiting the places of business. We are certain that the legislative body in passing the parking space provisions of the zoning ordinance had no thought of imposing on building owners the need for providing parking spaces for businesses that did not attract customers who used automobiles when visiting the places of business. Nor do we think that the legislative body intended parking space be provided for the total square footage in the building merely because some part of the building was used for "commercial purposes." We conclude that the legislative body intended parking space be provided according to the terms of the ordinance only for such space in the building as is used for "commercial purposes." This becomes apparent when it is realized that the building in question could be used for dwelling and other non-commercial purposes which call for the application of different parking regulations. It is obvious to this court that the legislative body was cognizant of the increasing numbers of people using automobiles for every purpose; business, social and otherwise. They were equally cognizant of the safety hazards involved in the parking and storing of automobiles on streets used for vehicular travel and the fact that when automobiles are parked in front of businesses and dwellings for a considerable period of time they may become a nuisance under the common law. Decker v. Goddard, 233 App.Div. 139, 251 N.Y.S. 440. Cognizant of these hazards and others that could be stated and desirous as the legislative body said of "promoting the * * * safety * * * comfort or the general welfare" of the people, they determined to require off-street parking space for businesses that attracted customers who used automobiles when visiting the places of business. The

term "commercial purposes" must be interpreted and construed in the light of this obvious intention of the legislative body.

There is no specific definition of "commercial purposes" in the zoning ordinance. A reading of the cases shows that the term "commercial" or the phrase "commercial purposes" are not susceptible of exact definition. They are given different meanings under varying circumstances and depend on the circumstances under which they are used.

The term "commercial," in its broad sense comprehends all business, while in a narrow sense it includes only those enterprises engaged in buying and selling goods and services. City of Sioux Falls v. Cleveland, 75 S.D. 548, 70 N.W.2d 62; Reid v. Linder, 77 Mont. 406, 251 P. 157, 161; United States v. Public Service Co. of Colorado, 10 Cir., 143 F.2d 79. In the case of State ex rel. Kansas City Power & Light Co. v. Smith, 342 Mo. 75, 111 S.W.2d 513, loc. cit. 515, the court said: "The ordinarily accepted use of the phrase 'commercial establishment' denotes a place where commodities are exchanged, bought, or sold, * * *." When the term "commercial" is limited to the purchase and sale or exchange of goods and commodities, it is said to be used in a narrow and restricted sense. 15 C.J.S. Commercial page 576.

In the case of City of Sioux Falls v. Cleveland, supra, (70 N.W.2d loc. cit. 65) quoting a principle announced in other cases the court said: "The zoning ordinance is in derogation of common-law rights to the use of private property. Its provisions should not be extended by implication." It is true that, technically speaking, zoning laws pertain almost exclusively to the types of buildings and dwellings that may be erected and the kinds of businesses that may be operated in certain areas of a community and that provisions for automobile parking space are not zoning laws. Nevertheless, we think the same principles of construction should be applied to them as are applied in the case of true zoning ordinances. This for the reason that provisions calling for parking space for automobiles is an attempt by law to control the use of private property and, therefore, such provisions should be given a restricted meaning and should not be extended by implication.

■ Mindful of our duty to construe the ordinance so as to fulfill the purpose for which it was passed and to give effect to the legislative intention we conclude that the phrase "commercial purposes" as used in the ordinance should be given its restrictive meaning. Applying this meaning to the "heating and sheet metal business" conducted in the basement of the building in question, it is clear that the basement is not used for "commercial purposes" within the contemplation of Zoning Ordinance No. 542. The evidence shows that goods and commodities are not purchased, sold and exchanged, nor services rendered on the premises in connection with the sheet metal business. John Meyer testified that he and his brother do not operate a retail establishment. The business is engaged in the fabrication of sheet metal products which are installed in buildings. No customers call at the place of business and the owners and employees are seldom there. From this we may infer that most of the fabrication work is done at the place of installation. We rule that under the ordinance it is unnecessary for the defendants to provide parking space for automobiles for the basement premises occupied by the sheet metal business.

■ The only part of the building "used for commercial purposes" within the contemplation of the Zoning Ordinance is the part occupied by the shoe store. Using the overall dimensions of the shoe store, without giving effect to the spaces that cannot be used, we find it contains 2700 square feet. The ordinance requires 3 parking spaces for each 300 square feet of floor space used for commercial purposes and further requires the parking area for each car be not less than 300 square feet including the

522

necessary driveway and space between automobiles on the parking lots. Using 2700 square feet as a base, 8100 square feet is the parking space required under the ordinance. Under plaintiffs' evidence the space available for parking (including the lot across the street from the building) is 9299 square feet. Under defendants' evidence it is 9590 square feet. No matter what measurements are used, the record shows that defendants have more than substantially complied with the parking space requirements of the zoning ordinance.

 The final point relied on by plaintiffs is that the trial court erred in not permitting plaintiffs to prove the additional space acquired by the defendants from the owner of the Crest Theatre was space needed by the owner of that lot in order for him to comply with the provisions of the zoning ordinance. Plaintiffs offered to prove by the witness, Walter H. Reiser, that the lot east of the Crest Theatre was insufficient in size to meet the space needed by the Crest Theatre under the zoning ordinance. The owner of the Crest Theatre was not a party to this action and we fail to see how a violation, if any, by him, of the zoning ordinance could be relevant to the issues presented by plaintiffs in their petition. If the owner of the Crest Theatre is violating the zoning ordinance, that can be the subject of another lawsuit. We would be inclined to give some recognition to this point of plaintiffs had they offered to prove that the owners of 8805 Gravois Avenue when renting the lot west of the Crest Theatre had agreed with the owner of the theatre that it could be used by the patrons of the theatre. No such offer of proof was made. Nor was any offer of proof made to show that the rental agreement for the lot across the street from the building in question was not entered into in good faith. The evidence indicates the contrary is true for it is not denied that defendants have a sign on the lot which reads "Hill Brothers Customer Parking Only." The fact that people other than the customers of Hill Brothers use the lot and thereby become trespassers cannot be the basis for charging a violation of the ordinance. In this connection, Jewett Yeates, a witness for plaintiffs, testified that the patrons of the Crest Theatre park on his lot, adding that people are going to park as close as they can to the place they are going to visit.

Finding no error, the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.