STATE of Missouri ex rel. Edward P. WEIN-
HARDT and Florence A. Weinhardt,
Petitioners-Appellants,

v.

LADUE PROFESSIONAL BUILDING, INC.,
a Corporation, and Jules Q. Strong, S. R.
Kinsella, George Engelsmann, Jr., Creigh-
ton B. Calfee and Harry G. Glessow, con-
stituting the Board of Adjustment of the
City of Ladue, Respondents.

No. 31991.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

F. Wm. McCalpin, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for petitioners-appellants.

Edward D. Weakley, Boyle, Priest, Elliott & Weakley, St. Louis, for respondents.

John H. Cunningham, Jr., St. Louis, amicus curiae, City of Ladue.

JAMES D. CLEMENS, Special Judge.

This case concerns a parking problem. The relators Edward P. and Florence A. Weinhardt seek to bar the respondent Ladue Professional Building, Inc., from erecting a medical office building on its vacant lot which adjoins theirs in the City of Ladue. Initially, the City's Building Commissioner declined a building permit because the building company had not provided enough off-street parking spaces. The building company appealed, and the City's Board of Zoning Adjustment reversed the commissioner's denial, and the permit was granted. Relators Weinhardt then brought certiorari proceedings. On review, the Circuit Court considered the Board's return, heard further evidence, and affirmed the Board's order granting the building permit. The Weinhardts' appeal to this court followed.

The issues raised here are these: Whether the evidence before the Board warranted it in granting the permit, either on the ground of compliance or hardship; the propriety of admitting new evidence in the Circuit Court; and the force of evidence that the Board heard unsworn testimony.

The lands under consideration here are three adjacent tracts lying between Clayton Road on the south and Conway Road on the north. The roads intersect at a sharp angle. At the eastern point is a tract owned by the Socony Mobil Oil Co. and leased to Robert French who operated a service station there. To the west of the service station is the proposed office building site of the respondent Ladue Professional Building, Inc. To the west of that is the land of the realtors Weinhardt on which they have a two-story building which houses their catering business and living quarters.

Section 7 of the City's zoning ordinance requires that in this area an office building shall afford off-street parking space for one motor vehicle " * * * for each two hundred (200) square feet of floor space in the building * * * ", and that such parking space " * * * shall be provided either on the lot or within three hundred (300) feet thereof * * * ." It seems that in the past the City's Building Commissioner had granted permits for commercial buildings where the number of required parking spaces was computed on the amount of rentable floor space in the building rather than on the amount of gross floor space. Accordingly, the respondents' ar-

chitects drew plans for the office building with a parking area for 42 cars. Using the rentable floor space as a basis for the computation, this would have been enough. However, using the gross floor space as a basis, there would have to be at least eight more parking spaces. After the building commissioner denied the permit, the respondent building company made arrangements with the lessee of the adjoining service station to rent parking space on his lot to park twelve additional cars, thus affording off-street parking for 54 cars.

With the problem in this posture, the respondent building company appealed to the City's Board of Zoning Adjustment. It claimed error in denial of the permit on the ground of inadequate parking space. Alternatively, it claimed that the denial of the permit on this ground imposed unusual difficulties and a particular hardship. This on the basis of § 89.090, Subd. 1(3), V.A.M.S., and § 15(7) of the City's zoning ordinance which empower the Board to grant a variance in such cases. The Board gave proper notice of a hearing on the respondents' appeal. In its subsequent return to the writ of certiorari, the Board included the duly certified minutes of its meeting at which the appeal was considered.

Because it was the Board's return that was the proper subject of the review in the Circuit Court, we must refer to and quote from it rather fully: Among those present at the hearing were Messrs. Strong, chairman, and Kinsella, Engelsmann, Calfee and Giessow, members of the Board, and the City's building commissioner Farrar and building inspector Bockhorst. Also present were the building company's architects and its attorney, Mr. Edward D. Weakley, and the respondents Weinhardt. Chairman Strong announced that the purpose of the hearing was the building company's appeal from the denial of its permit because of the minimum parking space requirements. The rest of the return is set out in full:

"Mr. Weakley stated that in August of 1962, plans were submitted for the construction of an office building, the proposed location being to the east of Weinhardt's Catering Company at Conway and Clayton Road. There was a discussion of the proposed building by Gale and Cannon, Architects with the officials of the City of Ladue, at which time various matters were discussed, and subject to several small changes, they were informed that the plans would be all right and the plans were altered and redesigned. That in August of 1962 the Architect's, in a conference with Mr. Bockhorst, it was stated that the parking lot requirements are computed on the basis of the rentable space; that it is comparable to the Fischer Building next to Sir John's Den on Clayton Road. Based on this, they computed the 42 parking spaces under the terms of Section 7 of the Zoning Ordinance. They were then informed that they were some eight parking spaces short. Mr. Weakley further noted that the entrance to the building will be on Clayton Road and the exit will be on Conway Road; that with the refusal to issue a permit, they contracted with the Mobil Oil Station operator for 12 additional parking spaces. Mr. Weakley stated that (1) they have conformed to the requirements, in that they have computed the parking area based on the net rentable space; (2) if the Board does not accept it, they cannot build it; that the Zoning Ordinance does not spell it out; that with respect to the type of building involved, it is strictly doctors and dentists who will occupy it; it will be a convenience to the residents of the City of Ladue; that the additional parking spaces brings them in compliance with the provisions of the Zoning Ordinance; that the financing was obtained from the Prudential Savings and Loan Association for 75% of the total cost of the building and the remaining 25% was put up by Mr. Niedringhaus and Mr. Karl M. Block, who are both residents of the City

of Ladue. That there has been $3,750.-00 put up in points, should this building not be built and if they do not get relief of these eight parking spaces, they will be out of business. Mr. Weakley then presented a tentative lease between the Ladue Professional Building and Mr. Storie, leasee of the Mobil Service Station for 12 additional parking spaces, stating that Mr. Storie was not the owner but that he has the right to do what he wants to do. Mr. Strong noted that it would remain only in effect for as long as Mr. Storie was there and that it was not a very definite time, only eight years. Mr. Weakley further stated that it was a Permissive Lease; that they would pay $8.00 per slot per month. Mr. Weakley further stated that the ordinance does not state clearly what it means. Mr. Strong then read Section 7 of the City's Zoning Ordinance No. 282, noting that the additional parking on the Mobil property would not be a violation; that it provides for parking either on the lot or within 300 feet thereof; that the parking space shall be adequate to accommodate one (1) car for each two hundred (200) feet of floor space, therefore they computed 42 car spaces. Mr. Weakley further added that the rentable space is 8,393 square feet and the gross square feet is 9,993.49 square feet, leaving a difference of 1600 square feet. Mr. Giessow asked what the position of the building will be with relation to the lot? Mr. Gale presented a model of the building, noting that the building will be approximately 43 feet from Clayton Road, also adding that the position of the building as it is shown on the model was made to scale. That the gross square feet included the halls, toilets, stairways and entrance lobby. Mr. Strong asked what part of the 1600 square feet includes the halls, toilets, etc.? Mr. Cannon figured it to be as follows: 816 square feet for corridors, 294 square feet for stair

wells, 158 square feet for mechanical equipment, 110 square feet for entrance lobby and 215 square feet for rest rooms. Mr. Giessow asked if there was going to be landscaping? Mr. Gale answered that it would be exactly as it was shown on the model and estimated the cost at $2,000.00 for landscaping. Mr. Strong asked Mr. Farrar how they had computed the parking spaces on previous buildings? Mr. Bockhorst stated that they had computed it on the net floor space, and that this is the second time this question has come up, the first being the Lammert Furniture Company. Mr. Strong noted that in regards to the Lammert Furniture Company, they had divided up some of the parking spaces. Mr. Bockhorst noted that the City of St. Louis required a minimum of 8 feet for each parking lane. Mr. Strong asked how many doctors or dentists would occupy the building? Mr. Weakley stated that there would be around eight but no more than ten. That their office hours would be staggered and that there would be six parking spaces for each doctor or dentist. Mr. Strong asked Mr. Weinhardt if he had any questions? Mr. Weinhardt stated that he now has trouble with the people parking on his lot and that this would add to his problem. Mr. Cannon noted that the driveway of the proposed building adjoins Mr. Weinhardt's west property line; that there is going to be an automatic barrier because there is going to be an approximate four foot drop and the cars would be below his property line. Mr. Weinhardt asked if they would be parking on any part of the City's property? (shoulder of road). Mr. Weakley stated that there is a ten foot road easement which is dedicated for public use which can be found in the plat books in the County; that there will be no parking on the road easement, such as at Sir John's Den and the shopping center on Clayton Road;

that there would be no parking on Clayton Road and that there is an adequate number of parking spaces.

"It was moved by Mr. Kinsella, seconded by Mr. Giessow and unanimously carried that the appeal of the Ladue Professional Building, Incorporated based on the petition and appeal be granted and relief be given to allow parking spaces for cars of not less than the eight spaces lacking based on providing parking spaces on the basis of the over all floor area rather than the rentable area according to the plans submitted, or approximately 42 cars rather than the 50 cars required by the City's Zoning Ordinance."

Upon submission of the case in the Circuit Court it was taken under advisement, and later the trial court filed its findings and judgment. It construed the Board's ruling as granting the permit on the ground of alleviating hardship, concurred in that finding, and affirmed the Board's decision. The relators' appeal to this court followed.

■ The purpose of this writ of certiorari was to test the legality of the Board's *order*. State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030(6); Cunningham v. Leimkuehler, Mo.App., 276 S.W.2d 633(3). The Board's order specifically granted the building company's appeal and by clear implication granted it the relief it prayed, the building permit. We consider the Board's order in light of the principle that quasi-judicial bodies cannot be expected to phrase their orders in the precise terminology courts strive for. Himmel v. Leimkuehler, Mo.App., 329 S.W.2d 264(5). So considered, we can construe it as granting the permit on either or both the grounds of compliance with the ordinance by affording the additional parking spaces, or particular hardship. It said: "It was moved by Mr. Kinsella, seconded by Mr. Giessow and unanimously carried that the appeal of the Ladue Professional Building, Incorporated based on the petition and appeal be granted and relief be given to allow parking spaces

for cars of not less than the eight spaces lacking based on providing parking spaces on the basis of the over all floor area rather than the rentable area according to the plans submitted, or approximately 42 cars rather than the 50 cars required by the City's Zoning Ordinance." Although the order was ambiguous as to the basis for its conclusion, the basis is not of legal significance to us. At page 1129 of 101 C.J.S. Zoning § 327, it is said: " * * * If the conclusion of the board is correct, it will not be set aside because the reason given therefor is wrong." As held in Donelson v. Board of Zoning Adjustment of City of St. Joseph, Mo.App., 368 S.W.2d 728(5), the force of a judgment does not reside in its recitals, but in the mandatory or decretal portion which adjudicates the issue. So, if the Board's order granting the permit can be sustained on either ground, or on any ground for that matter, it should be upheld. We have concluded that the record warrants the Board's decision on the ground that the respondent building company did comply with the minimum parking space requirements of the zoning ordinance.

■ To show compliance with the requirement of off-street parking, the respondent building company produced evidence before the Board that the rentable floor space of respondent's building was 8,393 square feet, which would require 42 parking spaces, and that the gross floor space was 9,993.49 square feet, which would require 50 parking spaces. The evidence before the Board was that the respondent building company had rented 12 additional parking spaces on the adjoining lot. § 7 of the ordinance required only that the required number of parking spaces " * * * shall be provided, either on the lot or within three hundred (300) feet thereof * * *." At the circuit court hearing the relators Weinhardt had evidence that the area computed on the basis of external measurements was 11,400 square feet, which would require 57 parking spaces. Even if we consider that evidence, it would not help the relators. They contend that floor space must be de-

termined by the building's external measurements, citing Reiser v. Meyer, Mo.App., 323 S.W.2d 514(4). Suffice it to say that that case does not so hold. We hold here that the evidence before the Board warranted it in finding that the respondent building company was required to have 50 available parking spaces and did in fact have 54 such spaces. So, the Board could properly grant the permit on the ground of compliance with the zoning ordinance. It would be a mere exercise in obiter dicta for us to discuss the merits of the further issue of whether the Board also had authority to grant a variance on the ground of hardship. We will not do so.

 The relators not only contend that the permit should have been denied because the external measurements of the building resulted in a calculation of 11,400 feet, but further strive to persuade us that the permit should be denied because the building exceeded the maximum height of 35 feet. Both contentions are based on relators' evidence produced not at the hearing before the Board, but brought up later at the trial in the Circuit Court, over the respondent building company's objection. We must determine the force and effect of this Circuit Court testimony. We do so in the light of two long standing principles. At common law, certiorari proceedings are not heard de novo and the reviewing court does not weigh the evidence, but deals only with questions of law that appear on the face of the record. See State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S.W.2d 319(1). And, when the review is statutory as here, the court's jurisdiction is further limited to that granted by the statute. State ex rel. Nigro v. Kansas City et al., 325 Mo. 95, 27 S.W.2d 1030(4). The statute providing for review of city zoning orders by certiorari is § 89.110, V.A.M.S. It authorizes circuit courts to issue writs of certiorari and says: "* * * If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence * * *." We do not think this was meant to change the nature of the hearing from one of review to one de novo on the merits. Instead, we think it was intended only to allow further evidence that touches upon the procedural legality of the hearing before the Board. Comparable review statutes have been so construed. See State ex rel. Beacon Court, Inc. v. Wind, Mo.App., 309 S.W. 2d 663(3), applying § 64.120, V.A.M.S. to reviews of decisions of zoning boards in Class One counties; and State ex rel. Horn v. Randall, Mo.App., 275 S.W.2d 758(3), applying § 536.140(4), V.A.M.S., to reviews of decisions of administrative agencies. This testimony offered by relators in the Circuit Court dealt with the merits of the case on which the Board had ruled, not with the procedural legality of the Board's hearing. The respondents' objection to the testimony should have been sustained, and we will disregard the testimony.

We refer again to the relators' last point that the Circuit Court erred in not reversing the Board's order because the proposed building violated the maximum height provision of the zoning ordinance. In their first amended petition for the writ of certiorari to review the Board's order, the relators for the first time claimed that the Board had erroneously granted the permit because the building violated Section 12 of the zoning ordinance prohibiting buildings over 35 feet high. At the trial in the Circuit Court, over respondents' objections, which we have ruled were valid, the relators introduced evidence of the ordinance and that the building was 41 feet and 3 inches high. Respondent countered this by showing that § 14 of the zoning ordinance excepted mechanical appurtenances in computing the height of buildings, and showed that the upper eight feet was housing for mechanical equipment for the building's elevator and air-conditioning equipment. The Circuit Court found this issue in favor of the respondent building company, and relators now claim it erred. The Circuit Court could well have declined to rule the point.

■ The scope of review from the Board's order is strictly limited. As said in State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030, l. c. 1033(5, 6):

"The review of a decision of a board of zoning appeals by the circuit court being purely statutory, the court's jurisdiction in such proceeding does not extend beyond that conferred by the statute. Looking to the statute it is apparent that the court is not vested with the power to supervise the discretion lodged with a board of zoning appeals; it is not authorized to entertain a hearing de novo and then make such order as in its opinion the board should have made. * * *"

The "Johnny-come-lately" claim of illegality of building height was not presented to, considered by, nor ruled on by the Board. And, as previously ruled herein, in the Circuit Court evidence is limited to issues of procedural legality, and may not extend to the merits of the case. In the case of Bourke v. Foster, Mo.App., 343 S.W.2d 208 (4) the court declined to consider such an extraneous issue, saying: " * * * To assume such power would really be hearing the matter de novo, exercising our own discretion and usurping the functions of the Board, rather than applying the statutory procedure of review. Neither we nor the circuit court can review a matter unless it was first presented to and passed upon by the Zoning Board and then only if the alleged injured party appeals. * * *" So, we must decline to review the point.

■ For their final point, the relators Weinhardt now claim that witnesses who appeared before the Board were not sworn, and argue that there was therefore no evidence before the Board to support its order granting the permit. This is the very kind of evidence that is admissible at the trial in the Circuit Court. It goes not to the merits of the case heard by the Board, but is an attack upon the procedural regularity of the Board's hearing. However, the relators did not plead such a defect in their petition, and did not offer evidence thereof at the trial in the Circuit Court. It was first broached at a hearing on relators' after-trial motion. The relators' contention here cannot stand, for a combination of reasons: There was no appropriate objection made by relators at the hearing before the Board. In their petitions for the writ of certiorari the relators challenged only the merits of the Board's ruling, not its procedural regularity. At the trial, no point was raised as to the propriety of the hearing, and the relators themselves introduced into evidence the minutes of the Board's hearing. Further, on this appeal the relators' Points Relied On do not comply with V.A.M.R. 83.05(e) by stating what action or ruling of the trial court is now claimed to be erroneous. So, the point now argued must be ruled against the relators.

We conclude that the judgment should be affirmed. It is so ordered.

ANDERSON, Acting P. J., and RUDDY, J., concur.