Marne GIPSON, Appellant,

v.

BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, Missouri, Respondent.

No. WD 31350.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Ronald C. Spradley, Kansas City, for appellant; Spradley & Wirken, Kansas City, of counsel.

Aaron A. Wilson, City Atty., Kathleen A. Hauser, Asst. City Atty., Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and TURNAGE, JJ.

PRITCHARD, Presiding Judge.

The issue, as presented by appellant, is whether respondent Board of Zoning Adjustment validly granted to Isadore Shafton and his wholly owned corporation, Charmaine, Inc., owning an apartment house at 4505–07 Jarboe, Kansas City, Missouri, a "zoning variance" concerning off-street parking, the apartment buildings area and parking facilities not initially being in conformance with amended zoning ordinances.

Shafton's original apartment building, built in 1966, had a lot area of 10,528 square feet in a district zoned R–4, and was built

in compliance with the then zoning ordinances. The ordinances were subsequently amended, and relevant to the times in question, the lot area was not in conformity with the new ordinance, § 65.080, 1,500 square feet per family. This was 15,000 square feet for the ten unit apartment, and 18,000 square feet for a twelve unit apartment, and apparently this was not in conformity with the amended ordinance which required a minimum of one off-street parking space per dwelling or apartment unit.

Shafton appealed from a decision of the Codes Administrator that there had been no building permit for the construction of two additional apartments in the complex; that there was a violation of the off-street parking requirements which required one off-street space, there not being ten for the (original) number of apartments; and that there was no record of a lawful nonconforming use of the original ten units.

Without obtaining a building permit, Shafton hired a contractor in the spring of 1976 to construct the two additional apartments. By application dated October 11, 1976, Shafton appealed the decision of the Codes Administrator that the apartment unit was in violation of the ordinances, as above mentioned, and requested a variance or modification of the general rule governing the use, construction or alteration of the building or structures or the use of the land "which by reason of exceptional circumstances or surrounding constitute a practical difficulty or unnecessary hardship."

A hearing first began on November 23, 1976, at which time appellant, who owns property on Jarboe, presented a petition signed by her and about 56 others who opposed the opening of the apartments due to the lack of parking. "The parking area is very, very congested, and I can only say that it is very disturbing to me to come home any time after dark and find cars blocking my driveway, so I can't even get into my own garage. And a garage in that area is quite a rare thing. The neighbors are quite up in arms about the lack of street parking that we have, and if we open, more apartments over there we are going

to have more of a problem than we have right now."

At the time of the first hearing, Shafton had been negotiating with a man in Brazil for the sale of abutting property, more than 2,500 square feet, but that proposal fell through, and a lease was being negotiated. Shafton testified that he would tear out the two units if he did not get the ground. Appellant testified that she would not object if stated conditions of obtaining the lease or removal of the apartments provided that the apartments would not be rented until after the lease was executed. The Board then, on November 23, 1976, approved Shafton's application subject to the condition of obtaining *the* lease for the additional parking and securing a building permit. Shafton had stated to the Board that he was obtaining a 55 year lease on abutting property, and apparently, as appellant contends, the approval of the Board was conditioned upon Shafton's obtaining *that* lease.

Several continuances were had, none at the instance of the protesters. On November 30, 1977, Robert McWhirter, Zoning Inspector, informed the Board that neither of the above conditions had been met, the units were built and occupied, and he requested that Shafton's previous approval be revoked. On September 12, 1977, Shafton, by letter, enclosed a copy of a signed agreement with the Byron Shutz Company for parking for the apartment building. This provided for a month to month rental at $60 per month for four parking spaces to the rear of 4510 Belleview. A revocation hearing was first set for January 10, 1978, but further continuances were had, one on April 25, 1978, "so that additional evidence on parking lot lease and building permits could be submitted for its [the Board's] consideration."

On June 7, 1978, a "Certificate of Occupancy or Compliance" was issued by the City to Charmaine, Inc. It recited, "THIS IS TO CERTIFY that the building, structure, land, or portion thereof located at 4505–07 Jarboe has been duly inspected and found to be acceptable as of this date for

occupancy or use as Apt House in accordance with applicable provisions of the Zoning Ordinance, Building Code, Property Maintenance Code and other applicable ordinances of the City of Kansas City, Missouri. * * * "

On September 25, 1978, Source Equities, Ltd., leased four parking spaces to Charmaine, Inc., on the rear lot of the Plaza West Office Center, 4510 Belleview, Kansas City, Missouri. The initial five year term was to expire September 24, 1983, and the lease granted to Charmaine the option to renew the lease for three additional five year periods.

The final hearing before the Board on the matter of the request for revocation of previous approval (November 30, 1977) was had on September 26, 1978. At that time the Certificate of Occupancy and the September 25, 1978, parking lease were introduced in evidence before the Board. Counsel for Shafton (Charmaine, Inc.) informed the Board that arrangements for abutting property parking had fallen through, and that arrangements for four off-street parking spaces had been made within 500 feet of the property-4510 Belleview.

Among its findings (October 10, 1978), the Board of Zoning Adjustment included that it had on November 23, 1976 granted a "variance" to 4505–07 Jarboe to allow construction of two additional dwelling units "provided that a lease was obtained for additional parking and a building permit was secured." It found also that the issue before the Board at that time was whether the conditions of the variance had been fulfilled, that the case appeared before the Board on the request of Robert McWhirter, Building Inspector I, Codes Administration, Public Works Department, for revocation of the "variance"; that the Certificate of Occupancy and the lease for parking were admitted into evidence; and that the Certificate of Occupancy is issued only after all building permits have been secured and work under such permits has been completed. [Don Nickle, a representative of the city's Building Permit section, had testified that a certificate of occupancy is not grant-

ed unless all building permits have been issued and complied with and there has been inspection and approval. A building permit was obtained on (Shafton's) particular project.] The Board concluded that it had jurisdiction to grant the "variance" pursuant to (ordinance) § 65.300, "and that such variance may have necessary safeguards attached as are necessary to fulfill the purpose and intent of Zoning Ordinance Exhibit 'A' "; a "variance" runs with the land irrespective of a change in ownership; and "that the Board was limited in consideration of this case as to whether the conditions attached to the variance were met and could not consider the question of whether a variance should be granted since the case before it was filed more than thirty (30) days after the granting of the variance."

■ The first question to be considered is whether appellant timely filed her writ of certiorari to the circuit court. That turns upon whether the Board's decision of November 23, 1976, was a final one. As above noted, that decision was conditioned upon Shafton obtaining "the" lease for additional parking and securing a building permit for the additional parking. The matter of whether a decision is final for the purposes of review by higher tribunals is in somewhat of a state of confusion as noted in *Thompson v. Hodge*, 348 S.W.2d 11, 14 (Mo. App.1961). But that case did resolve some of the confusion by considering whether judgment operates *in praesenti*, so as to fix the rights of the parties. There, the question was whether *if* defendants abided by an injunction a judgment of damages should be entered, and also a further order that *if* defendants failed to cease operation of a mill, a judgment for damages would be ordered. The court held, page 14[7, 8], that the judgment and further order were not final, saying, "The award of damages was not *in praesenti* but was to come into existence only upon certain contingencies which the court thereafter would necessarily have to determine to have occurred, and this, unless admitted, by the hearing of evidence on the subject. We must therefore hold that the May 5 judgment was not final in

the sense of being immune from modification." The matter of finality of a judgment was again touched upon in *Wallace v. Hankins*, 541 S.W.2d 82 (Mo.App.1976). There the trial court ordered specific performance conditioned upon performance of acts in the future, held to be not final and the appeal was dismissed. The court said, page 84[6–9], "A conditional judgment or decree is one whose enforcement is dependent on the performance of future acts by a litigant and is to be annulled if default occurs. * * * Conditional and alternative judgments and decrees are wholly void as they do not perform in praesenti and leave to speculation and conjecture what their final effect may be. In other words, under conditional or alternative judgments and decrees, the final resolution of the cause is consigned to the accomplishment vel non of future acts whose actual performance or nonperformance are matters dehors the record. [Citing cases and authority.] In situations such as we have here, the proper procedure is for the trial court to require plaintiffs to bring into court 'the price of its decree,' that is, to bring into court for the use of the defendants the money due them under the contract as a condition precedent to the granting of the relief." The foregoing authority requires the conclusion that the approval of the Board of Zoning as of November 23, 1976, was not final because it was *conditioned* upon Shafton getting a building permit for the two additional apartment units, and acquiring space for additional parking to accommodate the provisions of the amended zoning ordinance. See also *Burger v. Burger*, 481 S.W.2d 632, 634[2, 3] (Mo.App.1972), and note *State ex rel. Faris v. Eversole*, 332 S.W.2d 879, 880[1] (Mo. banc 1960), holding that in review of workmen's compensation proceedings (administrative review, as here), the usual requirement of finality, as found in civil cases generally, applies. The initial approval thus did not operate in *praesenti*, but was delayed until Shafton complied with the conditions. Albeit that Shafton did not himself come before the Board and show his compliance, and the matter was engendered by a decision of the Zoning Inspector of November 30, 1977, to revoke the previous approval, the matter did not become final until October 10, 1978. The writ of certiorari to the circuit court was timely filed on November 8, 1978. That writ necessarily called into question all of the proceedings prior to the Board's final decision, including the validity of its initial conditional approval of the use of the apartment property.

A "variance" has been defined as being in the "nature of waivers of the strict letter of the zoning law upon substantial compliance with it and without sacrificing its spirit and purpose." *Conner v. Herd*, 452 S.W.2d 272, 276[4–7] (Mo.App.1970). See also *Rosedale-Skinker Imp. Ass'n v. Board of Adjustment of the City of St. Louis*, 425 S.W.2d 929, 937[10–11] (Mo. banc 1968). Here, both parties seem to misconceive the nature of the proceedings before the Board of Zoning Adjustment. This misconception may perhaps be explained because both Shafton's application and the Board's own final decision speak of a "variance" from the requirements of the amended ordinance. There was, under the facts, no variance from uses permitted under the amended ordinance considering that the occupancy of the 10,528 square feet land area and the provision for ten parking spaces for the ten units in the apartment could be continued as a nonconforming use. No additional use was sought to be imposed on that area by the way of installing additional parking spaces which would be in violation of the "strict letter" of the amended ordinance. *Brown v. Beuc*, 384 S.W.2d 845 (Mo. App.1964), cited by appellant, is not in point for there applicant sought a variance on the particular property to eliminate a front yard line of 25 feet on a lot used for off-street parking, thus making parking areas not in conformity with the ordinance. In *State ex rel. Nigro v. Kansas City*, 27 S.W.2d 1030 (Mo. banc 1930), the landowner sought a variance in the zoning of a residentially-zoned tract to business purposes. *In re Botz*, 159 S.W.2d 367 (Mo.App.1942), involved a proposed change (variance) to parking on the rear half of applicant's premises. In *State ex rel. Sheridan v. Hud-*

*son, et al.,* 400 S.W.2d 425 (Mo.App.1966), applicants sought a variance in the zoning requirements of single family residential property for a proposed apartment complex use which the board granted conditioned upon the widening, paving and lighting a street therein. The court held that the Board had no authority to grant a variance for a nonconforming use.

The use of the land as an apartment building was permissible, as an R–4 area, under the zoning ordinances. Thus, and although Shafton constructed two additional apartments, securing much later a certificate of occupancy as apartments for the complex, that did not make the uses of the building nonconforming. No issue is here presented as to the construction of the two additional apartment units or the validity of the certificate of occupancy. The conditions attached to the Board's approval could only be regarded as bringing the present parking spaces to conformity with the amended ordinance. By lease of four spaces at 4510 Belleview, the parking spaces available exceed the requirements of the amended ordinance by two. The facts of this case are controlled by two cases. In the *Rosedale-Skinker* case, supra, Southwestern Bell Telephone Company had been refused a permit to erect an addition to its building by the building commissioner, which refusal the Board of Adjustment first sustained upon the ground that the erection of the new structure would reduce the space for off-street parking below the requirements of the Zoning Code. Thereafter, Bell acquired land adjoining its property on the west which would provide more parking spaces than required by ordinance, Bell's motion for rehearing was granted by the Board, which reversed its original ruling. The court held, page 932, that the Board had authority to grant the hearing and reverse its original ruling where material new conditions had arisen (the acquisition of additional off-street parking). In *Reiser v. Meyer,* 323 S.W.2d 514 (Mo.App. 1959), a building permit was issued despite the failure of the applicant to show the available and needed parking spaces for cars called for in the application. After the building was completed and a complaint was received, the Zoning Enforcement Officer made an inspection and ordered the owners of the building to provide additional off-street parking. After some delay, sufficient space was provided, some of it across the street from the building. The court held that there was no intent or action on the part of the Zoning Enforcement to alter or amend the parking space provisions of the zoning ordinance. So here, there is nothing to show that the Board of Zoning Adjustment altered or amended the parking space requirements for the apartment lot under the amended ordinance by issuing its conditional approval. As in the *Reiser* case, Shafton has more than sufficient parking accommodations under the ordinance.

It is unnecessary to consider respondent's Points II and III that appellant failed to join an indispensable party (Shafton) [who was in the case at all stages], or that appellant was not an aggrieved party.

The judgment is affirmed.

All concur.